1  Daniel S. Robinson (SBN 244245)
   Wesley K. Polischuk (SBN 254121)
2  Michael W. Olson (SBN 312857)
   **ROBINSON CALCAGNIE, INC.**
3  19 Corporate Plaza Drive
   Newport Beach, CA 92660
4  (949) 720-1288; Fax (949) 720-1292
   drobinson@robinsonfirm.com
5  wpolischuk@robinsonfirm.com
   molson@robinsonfirm.com
6

7  Todd S. Garber (*Pro Hac Vice Pending*)
   Jeremiah Frei-Pearson (*Pro Hac Vice Pending*)
8  **FINKELSTEIN, BLANKINSHIP,**
   **FREI-PEARSON & GARBER, LLP**
9  One North Broadway, Suite 900
   White Plains, NY 10601
10 (914) 298-3281; Fax:
   tgarber@fbfglaw.com
11 jfrei-pearson@fbgflaw.com
12

13 *Attorneys for Plaintiff Brandi Adams, individually*
   *and on behalf of all others similarly situated*
14

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BRANDI ADAMS, individually and on behalf of all others similarly situated, | Lead Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| CALIBRATED HEALTHCARE SYSTEMS, LLC and CALIBRATED HEALTHCARE, LLC, | |
| Defendants. | |

Plaintiff Brandi Adams ("Plaintiff") bring this Class Action Complaint on behalf of herself individually, and on behalf of all others similarly situated against Calibrated Healthcare Systems, LLC and Calibrated Healthcare, LLC (collectively, "Calibrated" and/or "Defendants") and alleges, upon personal knowledge as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1.      On or about August 2, 2024[1], Calibrated announced a security incident during which unauthorized parties accessed certain systems within its computer network between February 25, 2024 and February 26, 2024 and, during that timeframe, certain files containing the personally identifiable information ("PII") and protected health information ("PHI") of its patients were accessed, viewed, copied, and disclosed without authorization ("Data Breach"). The exposed information included Plaintiff and Class Members' names, dates of birth, medical diagnosis/treatment information, health insurance information, including claims and billing information, and, for some patients, their Social Security number and/or driver's license number (collectively, "Confidential Information").

2.      According to the Notice published on Calibrated's website, "Calibrated provides administrative and clinical healthcare services to entities across the United States. Calibrated maintains personal information related to healthcare services and billing processes that it receives in connection with the services it provides to its clients."

3.      The Notice further provides that "Calibrated encourages potentially affected individuals to remain vigilant against incidents of identity theft and fraud, to review account statements, and to monitor credit reports for suspicious activity and to detect errors. Please also review the "Additional Resources" section below."

4.      Despite discovering the Data Breach on in February 2024 (nearly six months

---

[1] Attached hereto as Exhibit 1 is a copy of the Notice of Data Breach that Plaintiff Brandi Adams received.

ago), Defendants failed to inform Class members that their Confidential Information had been access and exfiltrated until August 2024, preventing Plaintiff and Class Members from taking the necessary steps that Calibrated itself encourages them to take.

5.    While millions of patients sought out and/or used Defendants' services to obtain health care services, unauthorized parties stole and used their hard-to-change Social Security numbers and highly sensitive Confidential Information without the victims' knowledge.  Defendants' lax security practices allowed this intrusion to occur and their failure to promptly notify Plaintiff and Class members about the Data Breach have worsened Plaintiff's and other Class members' lives by, among other injuries: (a) adding to their already heightened financial obligations by placing them at an increased risk of fraudulent; (b) complicating diagnosis, prognosis, and treatment for their medical conditions by placing them at an  increased risk of having inaccurate medical information in their files; and/or (c) increasing the risk of other potential personal, professional, or financial harms that could be caused as a result of having their PII/PHI exposed.

6.    Calibrated made specific representations regarding the quality and security of its services. Calibrated asserted on its website, "We stand behind our quality performance by including service level guarantees in our Master Service Agreements." Additionally, Calibrated claimed to be "Certified for SOC 1 Type I and SOC 2 Type II data security," leading Plaintiff and Class Members to believe that their Confidential Information could be trusted with Calibrated who represented it would keep that information confidential, but for limited purposes that the Data Breach does not fall within.

7.    The Privacy Policy represents to patients, including Plaintiff and Class Members, that "[a]t Calibrated, we take your privacy seriously," and that they "seek to protect your Personal Data from unauthorized access, use and disclosure by using appropriate physical, technical, organizational and administrative security measures based on the type of Personal Data and how we are processing that data."

8.    Defendants not only led their patients to believe that they would protect their

Confidential Information involved in the Data Breach, but Defendants failed to live up to its own promises as well as its duties and obligations required by law and industry standards.

9.    Contrary to its promises to help patients improve the quality of their lives, Defendants' conduct has instead been a direct cause of the ongoing harm to Plaintiff and other Class members whose suffering has been magnified by the Data Breach, and who will continue to experience harm and data insecurity for the indefinite future.

10.    Specifically, Defendants failed to maintain reasonable and/or adequate security measures to protect Plaintiff's and other Class members' Confidential Information from unauthorized access and disclosure, apparently lacking, at a minimum: (1) reasonable and adequate security measures designed to prevent this attack even though Defendants knew or should have known that it was a prized target for hackers; and (2) reasonable and adequate security protocols to promptly detect the unauthorized intrusion into and removal of Confidential Information from its network pertaining to more than 3.3 million patients.

11.    Armed with Confidential Information, hackers can sell the Confidential Information to other unauthorized users or misuse themselves to commit a variety of crimes that harm Plaintiff and Class members.  For instance, they can take out loans, mortgage property, open financial accounts, and open credit cards in a victim's name; use a victim's information to obtain government benefits or file fraudulent returns to obtain a tax refund; obtain a driver's license or identification card in a victim's name; gain employment in another person's name; give false information to police during an arrest; or engage in medical fraud that can result in financial harm or a harmful misdiagnosis to Plaintiff and Class members.

12.    As a result of Defendants' willful failure to prevent the Data Breach, Plaintiff and Class members are more susceptible to identity theft, fraud, and other harm, and have experienced, will continue to experience, and face an increased risk of financial harms.

13.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Plaintiff's and Class Members' Confidential Information that Defendants collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

14.    Plaintiff, on behalf of all others similarly situated, allege claims for (1) negligence; (2) invasion of privacy; (3) breach of contract; (4) breach of implied contract; (5) unjust enrichment; (6) breach of fiduciary duty; (7) breach of confidence; (8) violation of the California Unfair Competition Law (Cal. Business & Professions Code § 17200, *et seq.*) for unlawful, fraudulent, and unfair business practice; (9) violation of the Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*); (10) violation of California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); (11) violation of California Consumer Records Act (Cal. Civ. Code § 1798.82 *et seq.*); (12) violation of the California Consumer Privacy Act (Cal. Civ. Code § 1798.150, *et seq.*); and (13) injunctive and declaratory relief.

15.    Plaintiff seeks remedies including, but not limited to, compensatory damages for identity theft, fraud, and time spent, reimbursement of out-of-pocket costs, adequate credit monitoring services funded by Defendants, and injunctive relief including improvements to Defendants' data security systems and practices to ensure they have reasonably sufficient security practices to safeguard patients' Confidential Information that remains in Defendants' custody to prevent incidents like the Data Breach from reoccurring in the future.

16.    As a direct and proximate result of Defendants' wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, Plaintiff has incurred (and will continue to incur) economic damages, and other actual injury and harm, in the form of (i) actual identity theft or identity fraud; (ii) the untimely and/or inadequate notification of the Data Breach;

(iii) unauthorized disclosure of their Confidential Information; (iv) breach of the statutorily-protected confidentiality of their Confidential Information; (v) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud caused by the Data Breach; (vi) the value of their time spent mitigating the impact of the Data Breach and mitigating increased risk of identity theft and/or identity fraud; (vii) deprivation of the value of their Confidential Information, for which there is a well-established national and international market; and (viii) the impending, imminent, and ongoing increased risk of future identity theft, identity fraud, economic damages, and other actual injury and harm.

## II.    PARTIES

17.    Plaintiff Brandi Adams is a resident citizen of the State of California. Plaintiff Adams is a patient and member of Defendants and otherwise received medical services from Defendants. In exchange for these services, Plaintiff Adams provided her Confidential Information to her medical providers who Plaintiff Adams understands, in turn, provided that information to Defendants. Plaintiff Adams believed, at the time of receiving services from Defendants, that they would maintain the privacy and security of her Confidential Information. Plaintiff Adams further believes she paid a premium to Defendants for their data security, and she would not have used Defendants' services or provided her Confidential Information to Defendants had she known that they would expose, or allow to be exposed, her Private Information, making it available to unauthorized parties. Defendants sent Plaintiff Adams a Notice of Data Breach, which indicated that her Confidential Information, including her name, date of birth, medical information, Authorization Number, medical record number, Member ID, diagnosis, diagnosis code, procedure type, prescription information, health insurance information and Health Plan Name or Code, had been disclosed to and viewed by unauthorized parties by Defendants during the Data Breach. Based on information and belief, these unauthorized parties accessed and viewed Plaintiff Adam's Private Information. As a result of the Data Breach and Defendants' actions, Plaintiff Adam has been injured, has

suffered financial losses, including purchasing credit monitoring, and emotional harms, and is subject to a substantial risk for further identity theft due to Defendants' Data Breach.

18.    Defendant Calibrated Healthcare Systems, LLC is a limited liability company with its principal place of business at 3633 Inland Empire Blvd, Suite 301, Ontario, California 91764.

19.    Defendant Calibrated Healthcare, LLC is a limited liability company with its principal place of business at 3633 Inland Empire Blvd, Suite 301, Ontario, California 91764.

### III.    JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

21.    This Court has personal jurisdiction over Defendants because Defendants headquartered in California, their principal place of business is in California, and they regularly conduct business in California.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to Plaintiff'' claims occurred in, was directed to, and/or emanated from this District, Defendants are based in this District, Defendants maintain patients' Confidential Information in the District, and have caused harm to Plaintiff and Class Members residing in this District.

### IV.    STATEMENT OF FACTS

#### A.    Calibrated's Business

23.    Calibrated is a healthcare management company based in Ontario, California, that oversees the healthcare needs of over 11 million patients across more than eight U.S. states.

24.    Calibrated specializes in managed care services, including Enhanced Care

Management (ECM), care coordination, health risk assessments, transition of care, and disease management.

25.    Calibrated operates extensively within California, where it collaborates with industry leaders to provide coordinated and hands-on healthcare services aimed at improving patient outcomes.

26.    Additionally, Calibrated extends its operations internationally, with offshore delivery centers in Gurgaon, India, and the Philippines, further enhancing its global workforce capabilities and technological solutions

27.    Defendants collected and stored Plaintiff's and Class members' most sensitive and private information, including, but not limited to, names, dates of birth, medical diagnosis/treatment information, health insurance information, including claims and billing information, and, for some patients, their Social Security number and/or driver's license number.

28.    Plaintiff and Class members relied on Defendants to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Plaintiff and Class Members believed Defendants would implement adequate security to safeguard their PII and PHI.

29.    Defendants had a duty to adopt reasonable measures to protect Plaintiff'' and Class members' PII and PHI from involuntary disclosure to third parties.

**B.    *The Data Breach***

30.    On February 26, 2024, Calibrated identified suspicious activity related to certain systems within its computer network. Following an investigation, Calibrated determined that certain portions of Calibrated's network were accessed between February 25 and February 26, 2024 and, during that timeframe, certain files were copied without authorization. Plaintiff and Class members are patients who paid and provided their Confidential Information directly or indirectly to Defendants in exchange for medical services.

31.     For more than a week, unauthorized parties maintained uninterrupted access to Defendants' servers containing the Confidential Information million of patients. Between February 25, 2024, and February 26, 2024, unauthorized parties accessed and viewed Plaintiff's and Class members' Confidential Information, and Calibrated ultimately disclosed that Confidential Information to unauthorized parties.

32.     Although Defendants became aware of the Data Breach on February 26, 2024, Defendants failed to inform Plaintiff and Class members of the Data Breach until approximately August 2024, nearly six months after unauthorized parties first accessed Defendants' systems and after Defendants allegedly detected the Data Breach.

33.     In their Notice of Data Breach, Defendants provided the following description of what happened with respect to the Data Breach:

> On February 26, 2024, Calibrated identified suspicious activity related to certain systems within its computer network. In response, Calibrated promptly took the systems offline and began an investigation. The investigation determined that certain portions of Calibrated's network were accessed between February 25 and February 26, 2024 and, during that timeframe, certain files were likely copied without authorization. As a result of that determination, Calibrated initiated a comprehensive review of the data to determine what type of information was present and to whom it relates. This review was recently completed and identified information relating to some of Calibrated's clients. Calibrated began notifying its clients on and is working with them to notify potentially impacted individuals.

34.     With respect to what information was involved in the Data Breach, Defendants provided the following description:

> The information present in the reviewed files differs by individual, and may include: name, date of birth, medical diagnosis/treatment information, and health insurance information, including claims and billing information. For a small amount of individuals, Social Security number and/or driver's license number may have also been present.

35.     With respect to what actions Defendants were taking at that time in response to the Data Breach, Defendants provided the following information:

///

> In response to this incident, Calibrated dedicated significant resources to confirming the security of its network, conducting a comprehensive investigation and completing a detailed review of the relevant files. Calibrated then notified its potentially affected clients and worked with them to provide notice to potentially impacted individuals as quickly as possible. As part of its ongoing commitment to the security of information in its care, Calibrated are also reviewing its existing policies and procedures and enhancing its existing security tools.
>
> As part of its notice to individuals on behalf of its clients, Calibrated is providing them with information and resources to help protect their information, including providing access to complimentary credit monitoring and identify restoration services, and encouraging these individuals to remain vigilant against incidents of identity theft and fraud by reviewing account statements and monitoring free credit reports for suspicious activity and to detect errors.

36.     With respect to what steps Defendants recommended Plaintiff and Class members take in response to the Data Breach, Defendants provided the following information:

> Calibrated encourages potentially affected individuals to remain vigilant against incidents of identity theft and fraud, to review account statements, and to monitor credit reports for suspicious activity and to detect errors. Please also review the "Additional Resources" section below.

37.     Thus, even Defendants acknowledge the risks associated with the Data Breach and that Plaintiff and Class members should take immediate steps to protect themselves from potential harm, including registering for fraud alerts and monitoring account statements, explanation of benefit forms, and credit bureau reports. Indeed, by

admitting that patient information was exfiltrated in its Notice of Data Breach, Defendants have already admitted that such measures were reasonable and necessary. Defendants are, thus, estopped from contending Plaintiff's and Class members' protective actions were unnecessary, unwise or unwarranted.

38.    Plaintiff's and Class members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class members. Unauthorized individuals can easily access and view the PII and PHI of Plaintiff and Class members.

39.    Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class members, causing their PII and PHI to be exposed to unauthorized access, viewing, and acquisition by unauthorized third parties.

### C.    The U.S. Department of Health and Human Services

40.    Plaintiff's and Class members' Confidential Information is "protected health information" as defined by 45 CFR § 160.103.

41.    Pursuant to 45 CFR § 164.408(a), Breach Reports are filed with the Secretary of the U.S. Department of Health and Human Services "following the discovery of a breach of unsecured protected health information."

42.    45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

43.    45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

44.    Plaintiff's and Class members' Confidential Information is "unsecured protected health information" as defined by 45 CFR § 164.402.

45.   As a result of the Data Breach, Plaintiff's and Class members' unsecured protected health information has been acquired, accessed, used, viewed, and/or disclosed in a manner not permitted under 45 CFR Subpart E.

46.   Based on information and belief, Defendants themselves believe that as a result of the Data Breach, Plaintiff's and Class members' unsecured protected health information has been acquired, accessed, used, viewed, and/or disclosed in a manner not permitted under 45 CFR Subpart.

47.   As a result of the Data Breach, Plaintiff's and Class members' unsecured protected health information was acquired, accessed, used, viewed, and/or disclosed in a manner not permitted under 45 CFR Subpart E and was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

48.   Based on information and belief, Defendants themselves reasonably believe Plaintiff's and Class members' unsecured protected health information was acquired, accessed, used, viewed, and/or disclosed in a manner not permitted under 45 CFR Subpart E and was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

49.   As a result of the Data Breach, Plaintiff's and Class members' unsecured protected health information was acquired, accessed, used, viewed and/or disclosed in a manner not permitted under 45 CFR Subpart E, and was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

50.   As a result of the Data Breach, Plaintiff's and Class members' unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E.

51.   Based on information and belief, Defendants themselves as a result of the Data Breach reasonably believe Plaintiff's and Class Members unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E.

52.   It is reasonable to infer that as a result of the Data Breach Plaintiff's and

11

Class members' unsecured protected health information that was acquired, accessed, used, viewed, and/or disclosed in a manner not permitted under 45 CFR Subpart E, and was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

53.    It should be rebuttably presumed that unsecured protected health information acquired, accessed, used, viewed and/or disclosed in a manner not permitted under 45 CFR Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

54.    After receiving notice that they were victims of a data breach that required the filing of a Breach Report in accordance with 45 CFR § 164.408(a), it is reasonable for recipients of that notice, including Plaintiff and Class members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

### D.    Defendants Acquire, Collect, and Store Plaintiff's and Class members' Confidential Information

55.    Defendants acquired, collected, and stored Plaintiff's and Class members' Confidential Information.

56.    As a condition of its relationships with Plaintiff and Class members, including through its affiliates, Defendants required that Plaintiff and Class members entrust Defendants with highly confidential PII and PHI.

57.    By obtaining, collecting, and storing the Confidential Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII and PHI from disclosure.

58.    Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendants to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

59.    Defendants acknowledge that they obtain, store, and transmit a substantial

amount of personal, financial, and medical information from individuals and/or patients.

60.    Calibrated made specific representations regarding the quality and security of its services. Calibrated asserted on its website, "We stand behind our quality performance by including service level guarantees in our Master Service Agreements." Additionally, Calibrated claimed to be "Certified for SOC 1 Type I and SOC 2 Type II data security," leading Plaintiff and Class members to believe that their Confidential Information could be trusted with Calibrated who represented it would keep that information confidential, but for limited purposes that the Data Breach does not fall within.

61.    The Privacy Policy represents to patients, including Plaintiff and Class members, that "[a]t Calibrated, we take your privacy seriously," and that they "seek to protect your Personal Data from unauthorized access, use and disclosure by using appropriate physical, technical, organizational and administrative security measures based on the type of Personal Data and how we are processing that data."

62.    For Californians, Defendants' Privacy Policy identifies the rights of California residents regarding their personal information, in pursuant to the California Consumer Privacy Act ("CCPA"). These rights include requesting disclosure of the information collected, the purpose for collecting the information, and any third parties with whom the information is sold or disclosed.

63.    Additionally, the rights under the CCPA identified by Defendants' Privacy Policy include requesting deletion of the personal information, and opting out of have personal information sold to third parties.

### E.    The Healthcare Sector is Particularly Susceptible to Cyberattacks.

64.    Defendants were on notice that companies in the healthcare industry were targets for cyberattacks.

65.    Defendants were also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that

hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[2]

66.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[3]

67.    The number of U.S. data breaches surpassed 1,000 in 2016, a record high and a forty percent increase in the number of data breaches from the previous year.[4] In 2017, a new record high of 1,579 breaches were reported representing a 44.7 percent increase.[5] That trend continues.

68.    The healthcare sector reported the second largest number of breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[6] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost

---

[2] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820    (last visited Sept. 7, 2020).

[3] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited Sept. 7, 2020).

[4] Identity Theft Resource Center, *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout* (Jan. 19, 2017), *available at:* https://www.idtheftcenter.org/surveys-studys (last accessed Sept. 18, 2020).

[5] Identity Theft Resource Center, *2017 Annual Data Breach Year-End Review, available at:* https://www.idtheftcenter.org/2017-data-breaches/ (last accessed Sept. 18, 2020).

[6] Identity Theft Resource Center, *2018 End -of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last accessed Sept. 18, 2020).

to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[7] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[8]

69.    Healthcare related data breaches have continued to rapidly increase. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the last 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[9] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[10]

**F.    *Securing PII and PHI and Preventing Breaches***

70.    Defendants could have prevented this Data Breach by properly securing and encrypting the Confidential Information of Plaintiff and Class members.  Alternatively, Defendants could have destroyed the data, especially decade-old data from former patients of Defendants' affiliated dental groups.

---

[7] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed Sept. 18, 2020).
[8] *Id.*
[9] *2019 HIMSS Cybersecurity Survey, available at*: https://www.himss.org/2019-himss-cybersecurity-survey (last accessed Sept. 18, 2020).
[10] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last accessed Sept. 18, 2020).

71.    Defendants' negligence in safeguarding the Confidential Information of Plaintiff and Class members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

72.    Despite the prevalence of public announcements of data breach and data security compromises, especially in the healthcare context, Defendants failed to take appropriate steps to protect the Confidential Information of Plaintiff and Class members from being compromised.

73.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[12]

74.    The ramifications of Defendants' failure to keep secure the PII and PHI of Plaintiff and Class members are long lasting and severe.  Once PII and PHI is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims is an imminent and impending threat of injury that continues for years.

75.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[13]

---

[11] 17 C.F.R. § 248.201 (2013).
[12] *Id.*
[13] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Nov. 11, 2021).

CLASS ACTION COMPLAINT

76.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the Federal Bureau of Investigation, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

17

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[14]

77.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

---

[14] *Id.* at 3-4.

CLASS ACTION COMPLAINT

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[15]

78.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**
  - Apply latest security updates
  - Use threat and vulnerability management

---

[15] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Nov. 11, 2021).

CLASS ACTION COMPLAINT

- Perform regular audit; remove privileged credentials

- **Thoroughly investigate and remediate alerts**
  - Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**
  - Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**
  - Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

- **Apply principle of least-privilege**
  - Monitor for adversarial activities
  - Hunt for brute force attempts
  - Monitor for cleanup of Event Logs
  - Analyze logon events

- **Harden infrastructure**
  - Use Windows Defender Firewall
  - Enable tamper protection
  - Enable cloud-delivered protection
  - Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[16]

79.    Given that Defendants were storing the Confidential Information of more than 100,000 individuals, Defendants could and should have implemented all of the above measures to prevent and detect ransomware attacks.

---

[16] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available    at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Nov. 11, 2021).

80.     The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the Confidential Information of more than 100,000 individuals, including Plaintiff and Class members.

### G.   *The Value of Confidential Information and the Effects of Unauthorized Disclosure.*

81.     At all relevant times, Defendants were well aware that the Confidential Information it collects from Plaintiff and Class members is highly sensitive and of significant value to those who would use it for wrongful purposes.

82.     Confidential Information is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[17] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and PHI on multiple underground Internet websites, commonly referred to as the dark web.

83.     While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[18]

84.     PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

85.     Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment.

---

[17]  Federal Trade Commission, *Warning Signs of Identity Theft, available at:* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed Apr. 21, 2020).

[18] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at:* https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed Apr. 21, 2020).

"Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

86.    Similarly, the FBI Cyber Division, in an April 8, 2014 Private Industry Notification, advised:

> Cyber criminals are selling [medical] information on the black market at a rate of $50 for each partial EHR, compared to $1 for a stolen social security number or credit card number. EHR can then be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft. EHR theft is also more difficult to detect, taking almost twice as long as normal identity theft.

87.    The ramifications of Defendants' failure to keep its patients' Confidential Information secure are long lasting and severe. Once Confidential Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

88.    Further, criminals often trade stolen Confidential Information on the "cyber black-market" for years following a breach. Cybercriminals can post stolen Confidential Information on the internet, thereby making such information publicly available.

89.    Approximately 21% of victims do not realize their identify has been compromised until more than two years after it has happened. [20] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers

---

[19] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last visited Sept. 7 , 2020).

[20]    *See* Medical ID Theft Checklist, *available at:* https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last accessed Sept. 7, 2020).

found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[21]

90.    Breaches are particularly serious in healthcare industries. The healthcare sector reported the second largest number of breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[22] Indeed, when compromised, healthcare related data is among the most private and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[23] Almost 50% of the surveyed victims lost their healthcare coverage as a result of the incident, while nearly 30% said their insurance premiums went up after the event. Forty percent of the victims were never able to resolve their identity theft at all. Seventy-four percent said that the effort to resolve the crime and restore their identity was significant or very significant. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[24]

91.    As a healthcare provider, Defendants knew, or should have known, the importance of safeguarding its patients' Confidential Information entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Defendants' patients as a result of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[21] Experian, *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches ("Potential Damages"), available at:* https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last accesses Sept. 7, 2020).

[22] Identity Theft Resource Center, *2018 End -of-Year Data Breach Report, available at*: https://notified.idtheftcenter.org/s/resource (last accessed Sept.7, 2020).

[23] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed Sept. 7, 2020); *see also*, National Survey on Medical Identity Theft, Feb. 22, 2010, cited at p. 2.

[24] *Id.*

92.     The compromised Confidential Information in the Data Breach is of great value to hackers and thieves and can be used in a variety of ways.  Information about, or related to, an individual for which there is a possibility of logical association with other information is of great value to hackers and thieves.  Indeed, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[25]  For example, different PII elements from various sources may be able to be linked in order to identify an individual, or access additional information about or relating to the individual.[26] Based upon information and belief, the unauthorized parties utilized the Confidential Information they obtained through the Data Breach to obtain additional information of Plaintiff and Class members that were misused.

93.     Further, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible.  This is known as the "mosaic effect."

94.     Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts. Thus, even if payment card information were not involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class members' Confidential Information to access accounts, including, but not limited to email accounts and financial accounts, to engage in the fraudulent activity identified by Plaintiff.

---

[25] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report 35-38 (Dec. 2010), *available at*: https://www.ftc.gov/sites/default/files/documents/ reports/federal-trade-commission-bureau-consumer-protection-preliminary-ftc-staff-report-protecting-consumer/101201privacyreport.pdf (as of April 18, 2021).

[26] *See id.* (evaluating privacy framework for entities collecting or using consumer data with can be "reasonably linked to a specific consumer, computer, or other device").

CLASS ACTION COMPLAINT

95.    The Confidential Information exposed is of great value to hackers and cyber criminals and the data compromised in the Data Breaches can be used in a variety of unlawful manners, including opening new credit and financial accounts in users' names.

///

///

### H.    Defendants' Conduct Violates HIPAA.

96.    HIPAA requires covered entities to protect against reasonably anticipated threats to the security of PHI. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.[27]

97.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Confidential Information like the data Defendants left unguarded. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

98.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendants to provide notice of the breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach***."[28]

99.    Based on information and belief, Defendants' Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations. Defendants' security failures include, but are not limited to, the following:

---

[27] HIPAA Journal, *What is Considered Protected Health Information Under HIPAA?,* *available at:* https://www.hipaajournal.com/what-is-considered-protected-health-information-under-hipaa/ (last accessed Sept. 7, 2020).

[28] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added) (last visited Sept. 7, 2020).

a.    Failing to ensure the confidentiality and integrity of electronic protected health information that Defendants create, receive, maintain, store and transmit in violation of 45 C.F.R. §164.306(a)(1);

b.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1);

c.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1);

d.    Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. §164.308(a)(6)(ii);

e.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. §164.306(a)(2);

f.    Failing to protect against any reasonably anticipated uses or disclosures of electronically protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

g.    Failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 C.F.R. §164.306(a)(94);

h.    Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §164.502, *et seq.*;

i.    Failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry

out their functions and to maintain security of protected health information in violation of 45 C.F.R. §164.530(b) and 45 C.F.R. §164.308(a)(5); and

j.    Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. §164.530(c).

///

### I.    *Defendants Failed to Comply with FTC Guidelines*.

100.    Defendants were also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

101.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[29]

102.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[30] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

---

[29] Federal Trade Commission, *Start With Security: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Sept. 7, 2020).

[30] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available       at:       https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Sept. 7, 2020).

103.    The FTC further recommends that companies not maintain Confidential Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[31]

104.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

105.    Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' Confidential Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

106.    Defendants were at all times fully aware of its obligation to protect the Confidential Information of patients because of its position as a trusted healthcare provider. Defendants were also aware of the significant repercussions that would result from its failure to do so.

**J.    Defendants Failed to Comply with Healthcare Industry Standards.**

107.    HHS's Office for Civil Rights notes:

> While all organizations need to implement policies, procedures, and technical solutions to make it harder for hackers to gain access to their systems and data, this is especially important in the healthcare industry. Hackers are actively targeting healthcare organizations, as they store large quantities of highly Private and valuable data.[32]

---

[31] FTC, *Start With Security*, *supra* note 16.

[32] HIPAA Journal, Cybersecurity Best Practices for Healthcare Organizations, https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/ (last accessed Sept. 7, 2020).

108.    HHS highlights several basic cybersecurity safeguards that can be implemented to improve cyber resilience that require a relatively small financial investment, yet can have a major impact on an organization's cybersecurity posture including: (a) the proper encryption of Confidential Information; (b) educating and training healthcare employees on how to protect Confidential Information; and (c) correcting the configuration of software and network devices.

109.    Private cybersecurity firms have also identified the healthcare sector as being particularly vulnerable to cyber-attacks, both because the of value of the Confidential Information which they maintain and because as an industry they have been slow to adapt and respond to cybersecurity threats.[33] They too have promulgated similar best practices for bolstering cybersecurity and protecting against the unauthorized disclosure of Confidential Information.

110.    Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry, Defendants chose to ignore them. These best practices were known, or should have been known by Defendants, whose failure to heed and properly implement them directly led to the Data Breach and the unlawful exposure of Confidential Information.

### K.  Plaintiff and Class members Suffered Damages

111.    The ramifications of Defendants' failure to keep patients' Confidential Information secure are long lasting and severe. Once Confidential Information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[34]

112.    The state of California generally prohibits healthcare providers from

---

[33] *See e.g.,* INFOSEC, *10 Best Practices For Healthcare Security, available at:* https://resources.infosecinstitute.com/category/healthcare-information-security/is-best-practices-for-healthcare/10-best-practices-for-healthcare-security/#gref (last accessed Sept. 7, 2020).

[34] *2014 LexisNexis True Cost of Fraud Study, available at:* https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf (last accessed Sept. 7, 2020).

disclosing a patient's confidential medical information without prior authorization. California's Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code § 56.10(a)) states that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or enrollee or subscriber of a health care service plan without first obtaining an authorization except as provided in subdivision (b) or (c)." (*See also* Cal. Civ. Code §§ 1798.80, *et seq*.)

113.    In addition to their obligations under state laws and regulations, Defendants owed a common law duty to Plaintiff and Class members to protect Confidential Information entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Confidential Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized parties.

114.    Defendants further owed and breached its duty to Plaintiff and Class members to implement processes and specifications that would detect a breach of its security systems in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

115.    As a direct result of Defendants' intentional, willful, reckless, and negligent conduct which resulted in the Data Breach, unauthorized parties were able to access, acquire, view, publicize, and/or otherwise cause the identity theft and misuse to Plaintiff's and Class Members Confidential Information as detailed above, and Plaintiff are now at a heightened and increased risk of identity theft and fraud.

116.    The risks associated with identity theft are serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

117.   Other risks of identity theft include loans opened in the name of the victim, medical services billed in their name, utility bills opened in their name, tax return fraud, and credit card fraud.

118.   Plaintiff and Class members did not receive the full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in their agreements with Defendants and they were damaged in an amount at least equal to the difference in the value of the healthcare with data security protection they paid for and the healthcare they received.

119.   As a result of the Data Breach, Plaintiff's and Class members' Confidential Information has diminished in value.

120.   The Confidential Information belonging to Plaintiff and Class members is private, private in nature, and was left inadequately protected by Defendants who did not obtain Plaintiff'' or Class members' consent to disclose such Confidential Information to any other person as required by applicable law and industry standards.

121.   Plaintiff's and Class members' Confidential Information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing, particularly scam marketing which several Plaintiff has experienced, without the approval of Plaintiff and Class members. Due to the Data Breach, unauthorized individuals can easily access the Confidential Information of Plaintiff and Class members.

122.   The Data Breach was a direct and proximate result of Defendants' failure to (a) properly safeguard and protect Plaintiff's and Class members' Confidential Information from unauthorized access, use, viewing, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' Confidential Information; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

123.    Defendants had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures, despite its obligation to protect patient data.

124.    Had Defendants remedied the deficiencies in their data security systems and adopted security measures recommended by experts in the field, they would have prevented the intrusions into its systems and, ultimately, the theft of Plaintiff's and Class members' Confidential Information.

125.    As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives.

126.    The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, twenty-nine percent spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[35]

127.    Defendants' failure to adequately protect Plaintiff's and Class members' Confidential Information has resulted in Plaintiff and Class members having to undertake numerous tasks to protect their information, which require extensive amounts of time, calls, and, for many of the credit and fraud protection services, payment of money – while Defendants sit by and do nothing to assist those affected by the incident. Instead, as Defendants' Data Breach notice indicates, it is putting the burden on Plaintiff and Class members to discover possible fraudulent activity and identity theft.

128.    Defendants' offer of 12 months of identity monitoring to Plaintiff and other

---

[35] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013, *available at*: https://www.bjs.gov/content/pub/pdf/vit12.pdf (last accessed Sept. 7, 2020).

CLASS ACTION COMPLAINT

Class members is woefully inadequate. While some harm has begun already, the worst may be yet to come. There may be a time lag between when harm occurs versus when it is discovered, and also between when Confidential Information is acquired and when it is used. Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's Confidential Information) – it does not prevent identity theft.[36] This is especially true for many kinds of medical identity theft, for which most credit monitoring plans provide little or no monitoring or protection.

129.    Plaintiff and Class members have been damaged in several other ways as well. All Plaintiff and Class members have been exposed to an impending, imminent, and ongoing increased risk of fraud, identity theft, and other misuse of their Confidential Information. Plaintiff and Class members must now and indefinitely closely monitor their financial and other accounts to guard against fraud. This is a burdensome and time-consuming activity. Certain Plaintiff and Class members have also purchased credit monitoring and other identity protection services, purchased credit reports, placed credit freezes and fraud alerts on their credit reports, and spent time investigating and disputing fraudulent or suspicious activity on their accounts. Plaintiff and Class members also suffered a loss of the inherent value of their Confidential Information.

130.    The Confidential Information stolen in the Data Breach can be misused on its own, or can be combined with personal information from other sources such as publicly available information, social media, etc. to create a package of information capable of being used to commit further identity theft. Thieves can also use the stolen Confidential Information to send spear-phishing emails to Class members to trick them into revealing sensitive information. Lulled by a false sense of trust and familiarity from a seemingly valid sender (for example Wells Fargo, Amazon, or a government entity), the individual

---

[36] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html (last visited Apr. 30, 2020).

agrees to provide sensitive information requested in the email, such as login credentials, account numbers, and the like.

131. As a result of Defendants' failures to prevent the Data Breach, Plaintiff and Class members have suffered, will suffer, and are at increased risk of suffering:

a. The compromise, publication, theft and/or unauthorized use of their Confidential Information;

b. Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

c. Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

d. The continued risk to their Confidential Information, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake appropriate measures to protect the Confidential Information in their possession;

e. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class members; and

f. Anxiety and distress resulting from fear of misuse of their Confidential Information.

132. In addition to a remedy for the economic harm, Plaintiff and Class members maintain an undeniable interest in ensuring that their Confidential Information is secure, remains secure, and is not subject to further misappropriation and theft.

**L. Defendants' Delay in Identifying & Reporting the Breach Caused Additional Harm**

133. It is axiomatic that:

> The quicker a financial institution, credit card issuer, wireless carrier or other service provider is notified that fraud has occurred on an account, the sooner these organizations can act to limit the damage. Early notification can also help limit the liability of a victim in some cases, as well as allow more time for law enforcement to catch the fraudsters in the act.[37]

134.    Indeed, once a data breach has occurred:

> [o]ne thing that does matter is hearing about a data breach quickly. That alerts consumers to keep a tight watch on credit card bills, insurance invoices, and suspicious emails. It can prompt them to change passwords and freeze credit reports. And notifying officials can help them catch cybercriminals and warn other businesses of emerging dangers. If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves (internal citations omitted).[38]

135.    Although their Confidential Information was improperly exposed on or about April 25, 2021, Plaintiff and Class members were not notified of the Data Breach until approximately September 2021, depriving them of the ability to promptly mitigate potential adverse consequences resulting from the Data Breach.

136.    Defendants notified HHS on or about June 24, 2021, but took nearly three months to notify the California Attorney General and more than one more month to inform Plaintiff and Class members.

137.    As a result of Defendants' delay in detecting and notifying consumers of the Data Breach, the risk of fraud for Plaintiff and Class members has been driven even higher.

## V.    CHOICE OF LAW

138.    The State of California has a significant interest in regulating the conduct of businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company

---

[37] *Identity Fraud Hits Record High with 15.4 Million U.S. Victims in 2016, Up 16 Percent According to New Javelin Strategy & Research Study*, Business Wire, *available at:* https://www.businesswire.com/news/home/20170201005166/en/Identity-Fraud-Hits-Record-High-15.4-Million (last accessed Sept. 7, 2020).

[38] Consumer Reports, *The Data Breach Next Door Security breaches don't just hit giants like Equifax and Marriott. Breaches at small companies put consumers at risk, too*, January 31, 2019, *available at:* https://www.consumerreports.org/data-theft/the-data-breach-next-door/ (last accessed Sept. 7, 2020).

headquartered and doing business in California. California has a greater interest in the nationwide claims of Plaintiff and members of the Nationwide Class than any other state and is most intimately concerned with the claims and outcome of this litigation.

139.   The corporate headquarters of Defendants, located in Ontario, California, is the "nerve center" of their business activities – the place where their officers direct, control, and coordinate the companies' activities, including their data security functions and policy, financial, and legal decisions.

140.   Based on information and belief, Defendants' response to the Data Breach at issue here, and corporate decisions surrounding such response, were made from and in California.

141.   Based on information and belief, Defendants; breaches of duty to Plaintiff and Nationwide Class members emanated from California.

142.   Application of California law to the Nationwide Class with respect to Plaintiff's and Class members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiff and the Nationwide Class.

143.   Under California's choice of law principles, which are applicable to this action, the common law of California applies to the nationwide common law claims of all Nationwide Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's Unfair Competition Law, Confidentiality of Medical Information Act, and California Consumer Privacy Act of 2018 may be applied to non-resident plaintiffs as against Defendants.

## VI.    CLASS ALLEGATIONS

144.   Plaintiff brings this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

///

///

///

///

145.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class: All individuals whose Confidential Information was compromised in the Data Breach announced by Defendants that occurred on or about February 25, 2024.**

146.    In addition to the Nationwide Class, Plaintiff seeks certification of the following state Sub-Class:

**California Sub-Class: All persons residing in California whose Confidential Information was compromised in the Data Breach announced by Defendants that occurred on or about February 25, 2024.**

147.    Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers, and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

148.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

149.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Nationwide Class and state Sub-Class (the "Classes") are so numerous that joinder of all members is impracticable. Based on information and belief, Defendants have over 11 million patients whose Confidential Information may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within Defendants' records.

150.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact

common to the Classes exist and predominate over any questions affecting only individual Class members. These include:

    a.    Whether and when Defendants actually learned of the Data Breach and whether their response was adequate;

    b.    Whether Defendants owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their Confidential Information;

    c.    Whether Defendants breached that duty;

    d.    Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class members' Confidential Information;

    e.    Whether Defendants acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class members' PII/PHI;

    f.    Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class members' PII/PHI secure and prevent loss or misuse of that Confidential Information;

    g.    Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

    h.    Whether Defendants caused Plaintiff's and Class members' damages;

    i.    Whether Defendants violated the law by failing to promptly notify Class members that their Confidential Information had been compromised;

    j.    Whether Plaintiff and the other Class members are entitled to actual damages, credit monitoring, and other monetary relief;

    k.    Whether Defendants violated the California Unfair Competition Law (Business & Professions Code § 17200, *et seq.*); and

CLASS ACTION COMPLAINT

l. Whether Defendants violated the Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq*.).

151. Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff'' claims are typical of those of other Class members because all had their Confidential Information compromised as a result of the Data Breach, due to Defendants' misfeasance.

152. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

153. Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

154. Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to

litigate a complex claim against large corporations, like Defendants. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

155. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

156. Defendants are is based in Ontario, California, and on information and belief, all managerial decisions emanate from there, the representations on Defendants' website originate from there, Defendants' misrepresentations originated from California, and therefore application of California law to the Nationwide Class is appropriate.

157. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

158. Adequate notice can be given to Class members directly using information maintained in Defendants' records.

159. Unless a Class-wide injunction is issued, Plaintiff and Class members remain at risk that Defendants will continue to fail to properly secure the Confidential Information of Plaintiff and Class members resulting in another data breach, continue to refuse to provide proper notification to Class members regarding the Data Breach, and

continue to act unlawfully as set forth in this Complaint.

160.   Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

161.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

      a.    Whether Defendants owed a legal duty to Plaintiff and Class members to exercise due care in collecting, storing, using, and safeguarding their Confidential Information;

      b.    Whether Defendants breached a legal duty to Plaintiff and Class members to exercise due care in collecting, storing, using, and safeguarding their Confidential Information;

      c.    Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

      d.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

      e.    Whether Class members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendants' wrongful conduct.

## **CAUSES OF ACTION**

### **COUNT I**
### **NEGLIGENCE**

**(On Behalf of Plaintiff and the Class)**

41

162.   Plaintiff restates and reallege all of the foregoing Paragraphs as if fully set forth herein.

163.   As a condition of receiving services, Plaintiff and Class members were obligated to provide Defendants directly, or through their affiliates, with their Confidential Information.

164.   Plaintiff and Class members entrusted their Confidential Information to Defendants with the understanding that Defendants would safeguard their information.

165.   Defendants had full knowledge of the sensitivity of the Confidential Information and the types of harm that Plaintiff and Class members could and would suffer if the Confidential Information were wrongfully disclosed.

166.   Defendants had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing its security protocols to ensure that Confidential Information in its possession was adequately secured and protected and that employees tasked with maintaining such information were adequately training on relevant cybersecurity measures.

167.   Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew of or should have known of the inherent risks in collecting and storing the Confidential Information of Plaintiff and Class members, the critical importance of providing adequate security of that Confidential Information, the current cyber scams being perpetrated, and that they had inadequate employee training and education and IT security protocols in place to secure the Confidential Information of Plaintiff and Class members.

168.   Defendants' own conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included their decision not to comply with HIPAA and industry standards

for the safekeeping and encrypted authorized disclosure of the Confidential Information of Plaintiff and Class members.

169.    Plaintiff and Class members had no ability to protect their Confidential Information that was in Defendants' possession.

170.    Defendants were in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

171.    Defendants had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff's and Class members' Confidential Information.

172.    Defendants have admitted that Plaintiff's and Class members' Confidential Information was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

173.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' Confidential Information while it was within Defendants' possession or control.

174.    Defendants improperly and inadequately safeguarded Plaintiff's and Class members' Confidential Information in deviation of standard industry rules, regulations and practices at the time of the Data Breach.

175.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of its Plaintiff's and Class members' Confidential Information.

176.    Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately disclose to Plaintiff and Class members the existence and scope of the Data Breach.

177.    But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff's and Class members' Confidential Information would not have been compromised and/or subsequently misused by unauthorized third

parties to engage in fraudulent activity further harming Plaintiff and Class members.

178.   There is a temporal and close causal connection between Defendants' failure to implement security measures to protect the Confidential Information and the harm suffered, or risk of imminent harm suffered, by Plaintiff and the Class.

179.   As a result of Defendants' negligence, unauthorized parties acquired Plaintiff's Confidential Information and used that specific information to harm Plaintiff and Class members as described above.  As a further result of Defendants' negligence, Plaintiff and Class members have suffered and will continue to suffer damages and injury including, but not limited to, (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their Confidential Information; (c) the loss of the opportunity of how their Confidential Information is used; (d) the compromise, publication, and/or theft of their Confidential Information; (e) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Confidential Information; (f) diminished value of the Confidential Information; (g) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (h) the continued risk to their Confidential Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Confidential Information in their continued possession; and (i) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Confidential Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

180.   Violations of statutes which establish a duty to take precautions to protect a particular class of persons from a particular injury or type of injury may constitute negligence *per se*.

181.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Confidential Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

182.  Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class members' Confidential Information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Confidential Information they obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class members.

183.  Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

184.  Plaintiff and Class members are within the class of persons that the FTC Act was intended to protect.

185.  The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class members.

186.  Defendants' violation of HIPAA also independently constitutes negligence *per se*.

187.  HIPAA privacy laws were enacted with the objective of protecting the confidentiality of patients' healthcare information and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

188.  Plaintiff and Class members are within the class of persons that HIPAA privacy laws were intended to protect.

189.  The harm that occurred as a result of the Data Breach is the type of harm HIPAA privacy laws were intended to guard against.

190.  As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the Data Breach including, but not limited to an increased risk of identity theft, fraud, and/or misuse of their Confidential Information and damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial and medical accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months if not years to discover and detect.

191.  Additionally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Confidential Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Confidential Information in its continued possession.

## COUNT II
## INVASION OF PRIVACY

### (On Behalf of Plaintiff and the Classes)

192.  Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

193.  California established the right to privacy in Article 1, Section 1 of the California Constitution.

194.  The State of California recognizes the tort of Intrusion into Private Affairs,

and adopts the formulation of that tort found in the Restatement (Second) of Torts which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977).

195. Plaintiff and Class members had a legitimate and reasonable expectation of privacy with respect to their Confidential Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

196. Defendants owed a duty to patients in their network, including Plaintiff and Class members, to keep their Confidential Information confidential.

197. The unauthorized release of Confidential Information, especially the type related to personal health information, is highly offensive to a reasonable person.

198. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class members disclosed their Confidential Information to Defendants as part of their use of Defendants' services, but privately, with the intention that the Confidential Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

199. The Data Breach constitutes an intentional interference with Plaintiff's and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

200. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew its information security practices were inadequate and would likely result in a data breach such as the one that harmed Plaintiff and Class members.

201.   Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and Class members.

202.   As a proximate result of Defendants' acts and omissions, Plaintiff's and Class members' Confidential Information was disclosed to and used by third parties without authorization in the manner described above, causing Plaintiff and Class members to suffer damages.

203.   Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that the Confidential Information maintained by Defendants can be viewed, distributed, and used by unauthorized persons.

204.   Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class members.

## COUNT III
## BREACH OF CONTRACT

### (On Behalf of Plaintiff and the Classes)

205.   Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth

206.   Plaintiff and other Class members entered into valid and enforceable express contracts with Defendants under which Plaintiff and other Class members agreed to provide their Confidential Information to Defendants, and Defendants agreed to their services for monetary compensation and, impliedly if not explicitly, agreed to protect Plaintiff's and other Class members' Confidential Information.

207.   These contracts include, but are not limited to, test requisition forms, patient signature cards, HIPAA authorization forms, and patient consent forms.

208.   To the extent Defendants' obligation to protect Plaintiff's and other Class members' Confidential Information was not explicit in those express contracts, the express contracts included implied terms requiring Defendants to implement data security

adequate to safeguard and protect the confidentiality of Plaintiff's and other Class members' Confidential Information, including in accordance with HIPAA regulations; federal, state and local laws; and industry standards. No Plaintiff would have entered into these contracts with Defendants without understanding that Plaintiff's and other Class members' Confidential Information would be safeguarded and protected; stated otherwise, data security was an essential implied term of the parties' express contracts.

209.   A meeting of the minds occurred, as Plaintiff and other Class members agreed, among other things, to provide their Confidential Information to Defendants for which Defendants derive a monetary benefit, in exchange for Defendants' agreement to protect the confidentiality of that Confidential Information.

210.   Both the provision of Defendants' services and the protection of Plaintiff's and other Class members' Confidential Information were material aspects of Plaintiff's and other Class members' contracts with Defendants.

211.   Defendants' promises and representations described above relating to HIPAA, CMIA, and industry practices, and about Defendants' purported concern about their patients' privacy rights became terms of the contracts between Defendants and their patients, including Plaintiff and other Class members. Defendants breached these promises by failing to comply with HIPAA, CMIA, and reasonable industry practices.

212.   Plaintiff and Class members read, reviewed, and/or relied on statements made by or provided by Defendants and/or otherwise understood that Defendants would protect its patients' Confidential Information if that information were provided to Defendants.

213.   Plaintiff and Class members fully performed their obligations under the implied contract with Defendants; however, Defendants did not.

214.   As a result of Defendants' breach of these terms, Plaintiff and other Class members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendants; they lost the difference in the value of the secure health services Defendants promised and the

insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, that required to place "freezes" and "alerts" with credit reporting agencies, to contact financial institutions, to close or modify financial and medical accounts, to closely review and monitor credit reports and various accounts for unauthorized activity, and to file police reports; and Plaintiff and other Class members have been put at increased risk of future identity theft, fraud, and/or misuse of their Confidential Information, which may take months if not years to manifest, discover, and detect.

215. Plaintiff and Class members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## COUNT IV
## BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiff and the Classes, in the Alternative to Count III)

216. Plaintiff restates and reallege all of the foregoing Paragraphs as if fully set forth herein.

217. Plaintiff and Class members were required to provide their Confidential Information to Defendants as a condition of their use of Defendants' services. By providing their Confidential Information, and upon Defendants' acceptance of such information, Plaintiff and all Class members, on one hand, and Defendants, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contracts concerning Defendants' services to be provided by Defendants to Plaintiff.

218. These implied-in-fact contracts obligated Defendants to take reasonable steps to secure and safeguard Plaintiff'' and other Class members' Confidential Information. The terms of these implied contracts are further described in the federal laws, state laws, and industry standards alleged above, and Defendants expressly assented to these terms in their Notice of Privacy Practices and other public statement described

1  above.

2  219.   Plaintiff and Class members paid money, or money was paid on their behalf,

3  to Defendants in exchange for services, along with Defendants' promise to protect their

4  health information and other Confidential Information from unauthorized disclosure.

5  220.   In their written privacy policies, Defendants expressly promised Plaintiff and

6  Class members that it would only disclose Confidential Information under certain

7  circumstances, none of which relate to the Data Breach.

8  221.   Defendants promised to comply with HIPAA standards and to make sure

9  that Plaintiff's and Class Members Confidential Information would remain protected.

10  222.   Implicit in the agreement between Plaintiff and Class Members and the

11  Defendants to provide Confidential Information was Defendants' obligation to (a) use

12  such Confidential Information for business purposes only; (b) take reasonable steps to

13  safeguard that Confidential Information; (c) prevent unauthorized disclosures of the

14  Confidential Information; (d) provide Plaintiff and Class Members with prompt and

15  sufficient notice of any and all unauthorized access and/or theft of their Confidential

16  Information; (e) reasonably safeguard and protect the Confidential Information of

17  Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain the

18  Confidential Information only under conditions that kept such information secure and

19  confidential.

20  223.   Without such implied contracts, Plaintiff and Class Members would not have

21  provided their Confidential Information to Defendants.

22  224.   Plaintiff and Class Members fully performed their obligations under the

23  implied contract with Defendants; however, Defendants did not.

24  225.   Defendants breached the implied contracts with Plaintiff and Class Members

25  by failing to conduct the following:

26          a.  reasonably safeguard and protect Plaintiff's and Class Members Confidential

27              Information, which was compromised as a result of the Data Breach;

28          b.  comply with their promise to abide by HIPAA;

51

CLASS ACTION COMPLAINT

c. ensure the confidentiality and integrity of electronic protected health information that Defendants created, received, maintained, and transmitted in violation of 45 C.F.R 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R 164.312(a)(1);

e. implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R 164.308(a)(1);

f. identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R 164.308(a)(6)(ii); and

g. protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R 164.306(a)(2).

226. As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiff and other Class members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendants; they lost the difference in the value of the secure health services Defendants promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, that required to place "freezes" and "alerts" with credit reporting agencies, to contact financial institutions, to close or modify financial and medical accounts, to closely review and monitor credit reports and various accounts for unauthorized activity, and to file police reports; and Plaintiff and other Class members have been put at an increased risk of identity theft, fraud, and/or misuse of their Confidential Information, which may take months if not years to manifest, discover, and detect.

/// 

///

**COUNT V**
**UNJUST ENRICHMENT**

**(On Behalf of Plaintiff and the Classes)**

227.    Plaintiff restates and reallege all of the foregoing Paragraphs as if fully set forth herein.

228.    Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they purchased goods and services from Defendants and in so doing provided Defendants with their Confidential Information. In exchange, Plaintiff and Class Members should have received from Defendants the goods and services that were the subject of the transaction and have their Confidential Information protected with adequate data security.

229.    Defendants knew that Plaintiff and Class Members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the Confidential Information of Plaintiff and Class Members for business purposes.

230.    The amounts Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendants' network and the administrative costs of data management and security.

231.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

232.    Defendants failed to secure Plaintiff's and Class Members Confidential Information and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

233.    Defendants acquired the Confidential Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

234.  If Plaintiff and Class Members knew that Defendants had not reasonably secured their Confidential Information, they would not have agreed to Defendants' services.

235.  Plaintiff and Class Members have no adequate remedy at law.

236.  As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their Confidential Information; (c) the loss of the opportunity of how their Confidential Information is used; (d) the compromise, publication, and/or theft of their Confidential Information; (e) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Confidential Information; (f) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (g) the continued risk to their Confidential Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Confidential Information in their continued possession; and (h) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Confidential Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

237.  As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

238.  Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class members overpaid for Defendants' services.

///

1  ///

2  ///

3  **COUNT VI**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**
4  **CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* –**
**UNLAWFUL, FRAUDULENT, AND UNFAIR BUSINESS PRACTICES**
5

6  **(On Behalf of Plaintiff and the Classes, or,**
**alternatively, the California Sub-Class)**

7  239.   Plaintiff restates and reallege all of the foregoing Paragraphs as if fully set

8  forth herein.

9  240.   The California Unfair Competition Law, Cal. Bus. & Prof. Code sections

10  17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent," or "unfair" business act

11  or practice and any false or misleading advertising, as defined by the UCL and relevant

12  case law.

13  241.   By reason of Defendants' above-described wrongful actions, inaction, and

14  omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff and

15  Class Members' Confidential Information, Defendants engaged in unlawful, unfair, and

16  fraudulent practices within the meaning of the UCL.

17  242.   Defendants have violated Cal. Bus. and Prof. Code § 17200, *et seq*., by

18  engaging in unlawful, unfair, or fraudulent business acts and practices and unfair,

19  deceptive, untrue, or misleading advertising that constitute acts of "unfair competition"

20  as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the

21  Nationwide Class.

22  243.   Defendants' business practices as alleged herein are unfair because they

23  offend established public policy and are immoral, unethical, oppressive, unscrupulous,

24  and substantially injurious to consumers, in that the Confidential Information of Plaintiff

25  and Class Members has been compromised for unauthorized parties to see, use, and

26  otherwise exploit.

27  244.   Defendants' above-described wrongful actions, inaction, and omissions, the

28  resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class

Members Confidential Information also constitute "unfair" business acts and practices within the meaning of Business & Professions Code sections 17200, *et seq*., in that Defendants' conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

245. Defendants engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members Confidential Information with knowledge that the information would not be adequately protected; by violating the California Confidentiality Of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; by violating the other statutes described above; and by storing Plaintiff's and Class Members Confidential Information in an unsecure electronic environment in violation of HIPAA and California's data breach statute, Cal. Civ. Code § 1798.81.5, which require Defendants to take reasonable methods of safeguarding the Confidential Information of Plaintiff and the Class members.

246. Defendants' practices were also unlawful and in violation of Civil Code sections 1798, *et seq.* and Defendants' own privacy policy because Defendants failed to take reasonable measures to protect Plaintiff's and Class Members Confidential Information and failed to take remedial measures such as notifying its users when it first discovered that their Confidential Information may have been compromised.

247. In addition, Defendants engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code §1280.15(b)(2).

248. Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the Confidential Information they provided to Defendants will remain private and secure, when in fact it has not been maintained in a private and secure manner, and that Defendants would take proper

measures to investigate and remediate a data breach, when Defendants did not do so.

249.  Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their Confidential Information and lack of notice.

250.  But for Defendants' misrepresentations and omissions, Plaintiff and Class Members would not have provided their Confidential Information to Defendants, or would have insisted that their Confidential Information be more securely protected.

251.  As a direct and proximate result of Defendants' unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Defendants for the services, the loss of Plaintiff's and Class Members legally protected interest in the confidentiality and privacy of their Confidential Information, nominal damages, and additional losses as described herein.

252.  Defendants knew or should have known that Defendants' computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members Confidential Information and that the risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

253.  Plaintiff seeks prospective injunctive relief, including improvements to Defendants' data security systems and practices, in order to ensure that such security is reasonably sufficient to safeguard patients' Confidential Information that remains in Defendants' custody, including but not limited to the following:

      a. Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party

security auditors;

b. Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

d. Ordering that Defendants segment patient data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

e. Ordering that Defendants not transmit Confidential Information via unencrypted email;

f. Ordering that Defendants not store Confidential Information in email accounts;

g. Ordering that Defendants purge, delete, and destroy in a reasonably secure manner patient data not necessary for provisions of Defendants' services;

h. Ordering that Defendants conduct regular computer system scanning and security checks;

i. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j. Ordering Defendants to meaningfully educate their current, former, and prospective patients about the threats they face as a result of the loss of their Confidential Information to third parties, as well as the steps they must take to protect themselves.

254. Unless such Class-wide injunctive relief is issued, Plaintiff and Class Members remain at risk, and there is no other adequate remedy at law that would ensure

that Plaintiff (and other consumers) can rely on Defendants' representations regarding its data security in the future.

255.  Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the Class, seek relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendants may have acquired by means of Defendants' unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Defendants because of Defendants' unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT VII
## VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT,
## CAL. CIV. CODE § 56, *ET SEQ*.

**(On Behalf of Plaintiff and the Classes, or, alternatively, the California Sub-Class)**

256.  Plaintiff restates and reallege all of the foregoing paragraphs as if fully set forth herein.

257.  At all relevant times, Defendants were health care providers because they had the "purpose of maintaining medical information to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual."

258.  Defendants are providers of healthcare within the meaning of Civil Code § 56.06(a) and maintains medical information as defined by Civil Code § 56.05.

259.  Plaintiff and Class Members are patients of Defendants, as defined in Civil Code § 56.05(k).

260.  Plaintiff and Class Members provided their personal medical information to Defendants.

261.  At all relevant times, Defendants collected, stored, managed, and transmitted

Plaintiff's and Class Members personal medical information.

262.   As a provider of health care or a contractor, Defendants are required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated or released without patients' authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

263.   As a provider of health care or a contractor, Defendants are required by the CMIA not to disclose medical information regarding a patient without first obtaining an authorization under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35 and 56.104.

264.   As a provider of health care or a contractor, Defendants are required by the CMIA to create, maintain, preserve, and store medical records in a manner that preserves the confidentiality of the information contained therein under Civil Code §§ 56.06 and 56.101(a).

265.   As a provider of health care or a contractor, Defendants are required by the CMIA to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in its possession under Civil Code §§ 56.06 and 56.101(b)(1)(A).

266.   As a provider of health care or a contractor, Defendants are required by the CMIA to take appropriate preventive actions to protect the confidential information or records against release consistent with Defendants' obligations under the CMIA, under Civil Code § 56.36I(2)(E).

267.   Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

268.   As a result of the Data Breach, Defendants have misused, disclosed, and/or allowed third parties to access and view Plaintiff's and Class Members personal medical information without their written authorization compliant with the provisions of Civil

Code §§ 56, *et seq.*

269.  The hacker or hackers who committed the Data Breach obtained Plaintiff's and Class Members personal medical information, viewed it, and now have it available to them to sell to others bad actors or otherwise misuse.

270.  As a further result of the Data Breach, the confidential nature of the Plaintiff's medical information was breached as a result of Defendants' negligence. Specifically, Defendants knowingly allowed and affirmatively acted in a manner that allowed unauthorized parties to access and actually view Plaintiff's and Class members' Confidential Information.

271.  Defendants' misuse and/or disclosure of medical information regarding Plaintiff and Class Members constitutes a violation of Civil Code §§ 56.10, 56.11, 56.13, and 56.26.

272.  As a direct and proximate result of Defendants' wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and Class Members personal medical information was disclosed without written authorization.

273.  By disclosing Plaintiff's and Class Members Confidential Information without their written authorization, Defendants violated California Civil Code § 56, *et seq.*, and their legal duty to protect the confidentiality of such information.

274.  Defendants also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

275.  As a direct and proximate result of Defendants' wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class Members written authorization.

276.  Defendants' negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff and Class Members' medical information in a manner that

preserved the confidentiality of the information contained therein violated the CMIA, Cal. Civ. Code §§ 56.06 and 56.101(a). By Defendants' own admission, patients' confidential medical information contained in unencrypted emails and attachments has been accessed and viewed by an unauthorized third party or parties, and thus Defendants have negligently released medical information concerning Plaintiff and Class Members. Accordingly, Defendants' systems and protocols did not protect and preserve the integrity of electronic medical information in violation of the CMIA, Cal. Civ. Code § 56.101.

277.    As a direct and proximate result of Defendants' and/or its employees' above-described conduct in violation of the CMIA, Plaintiff and Class Members were injured and have suffered damages, as described above, from Defendants' illegal disclosure and/or negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and are therefore entitled to nominal damages of one thousand dollars ($1,000) for each violation under Civil Code §56.36(b)(1); the amount of actual damages, if any, for each violation under Civil Code §56.36(b)(2); injunctive relief; and attorneys' fees, expenses, and costs.

## COUNT VIII
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
## CAL. CIV. CODE § 1750, *ET SEQ.*

**(On Behalf of Plaintiff and the Classes, or, alternatively, the California Sub-Class)**

278.    Plaintiff restates and reallege all the foregoing paragraphs as if fully set forth herein.

279.    As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access and disclosure. The California Legislature explained: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential

physical harm."

280.   As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendants failed to implement such procedures which resulted in the Data Breach.

281.   It also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

282.   Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

283.   Plaintiff and the Class members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September I, 2017."

284.   Defendants are a "business" as defined by Civ. Code § 1798.140(c) because

285.   Defendants:

a. are a 'sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners';

b. 'collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information';

c. do business in California; and

d. have annual gross revenues in excess of $25 million; or annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

286. The Confidential Information taken in the Data Breach is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff and the Class members' unencrypted names, Social Security numbers, personal financial information, government-issued identification numbers, and personal healthcare information, among other information.

287. Plaintiff and the putative Class members' Confidential Information was subject to unauthorized access and exfiltration, theft, or disclosure because their PII/PHI, including names, Social Security numbers, personal financial information, government-issued identification number, and personal healthcare information, among other information were wrongfully taken, accessed, viewed, and acquired by unauthorized third parties.

288. The Data Breach occurred as a result of Defendants' failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and the Class members' Confidential Information. Defendants failed to implement reasonable security procedures to prevent an attack on its

server or network, including its email system, by hackers and to prevent unauthorized access of Plaintiff's Exhibit and the Class members' Confidential Information as a result of this attack.

289.   On October 28, 2021, Plaintiff Warren provided Defendants with written notice of their violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1), which he alleges Defendants have violated. On November 18, 2021, Plaintiff Ponce provided Defendants with written notice of their violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1), which she alleges Defendants have violated. Based on information and belief, Defendants have not cured the violation within 30 days thereof, thus Plaintiff seeks the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, or actual damages, whichever is greater, *See* Cal. Civ. Code § 1798.150(a)(1)(A) & (b), on behalf of themselves individually and for each of the California Sub-Class members.

290.   As a result of Defendants' failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff seeks, injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

**COUNT IX**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT CAL. CIV. CODE § 1750, *ET SEQ*.**

**(On Behalf of Plaintiff and the Classes, or, alternatively, the California Sub-Class)**

291.   Plaintiff restates and realleges all the foregoing paragraphs as if fully set forth herein.

292.   This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq*.

293.   Defendants have long had notice of Plaintiff's allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about November 16, 2021. Further,

Defendants are the parties with the most knowledge of the underlying facts giving rise to Plaintiff's allegations, so that any pre-suit notice would not put Defendants in a better position to evaluate those claims. And, Plaintiff Ponce provided Defendants with written notice of their violations of the CCPA on November 18, 2021, which put Defendants on notice of the remedies it must correct. To the extent additional notice is required, Plaintiff will issue separate demands under Cal. Civ. Code § 1782(a). Plaintiff in the alternative seek only injunctive relief pursuant to Cal. Civ. Code § 1782, subdivision (d), which provides that "[a]n action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)."

294. Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

295. Plaintiff, Class members, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

296. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants was likely to deceive consumers.

297. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

298. Defendants violated this provision by representing that it took appropriate measures to protect Plaintiff's and the Class members' Confidential Information. Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

299. Plaintiff and the Class members relied upon Defendants' representations and were induced to sign up for Defendants' services, and provide their Confidential Information which contains value in order to obtain services from Defendants.

300. As a result, Plaintiff and Class Members were induced to enter into a relationship with Defendants and provide their Confidential Information.

301.   As a result of engaging in such conduct, Defendants have violated Civil Code
§ 1770.

302.   Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of
this Court that includes, but is not limited to, an order enjoining Defendants from
continuing to engage in unlawful, unfair, or fraudulent business practices or any other act
prohibited by law.

303.   Plaintiff and Class Members suffered injuries caused by Defendants'
misrepresentations, because they provided their Confidential Information believing that
Defendants would adequately protect this information.

304.   Plaintiff and Class Members may be irreparably harmed and/or denied an
effective and complete remedy if such an order is not granted.

305.   The unfair and deceptive acts and practices of Defendants, as described
above, present a serious threat to Plaintiff and Class Members.

306.   Plaintiff seeks prospective injunctive relief, including improvements to
Defendants' data security systems and practices, in order to ensure that such security is
reasonably sufficient to safeguard patients' Confidential Information that remains in
Defendants' custody, including but not limited to the following:

    a. Ordering that Defendants engage third-party security
auditors/penetration testers as well as internal security personnel to
conduct testing, including simulated attacks, penetration tests, and audits
on Defendants' systems on a periodic basis, and ordering Defendants to
promptly correct any problems or issues detected by such third-party
security auditors;

    b. Ordering that Defendants engage third-party security auditors and
internal personnel to run automated security monitoring;

    c. Ordering that Defendants audit, test, and train their security personnel
regarding any new or modified procedures;

    d. Ordering that Defendants segment patient data by, among other things,

creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

e. Ordering that Defendants not transmit Confidential Information via unencrypted email;

f. Ordering that Defendants not store Confidential Information in email accounts;

g. Ordering that Defendants purge, delete, and destroy in a reasonably secure manner patient data not necessary for provisions of Defendants' services;

h. Ordering that Defendants conduct regular computer system scanning and security checks;

i. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j. Ordering Defendants to meaningfully educate their current, former, and prospective patients about the threats they face as a result of the loss of their Confidential Information to third parties, as well as the steps they must take to protect themselves.

307.   Unless such Class-wide injunctive relief is issued, Plaintiff and Class Members remain at risk, and there is no other adequate remedy at law that would ensure that Plaintiff (and other consumers) can rely on Defendants' representations regarding its data security in the future.

308.   Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the Class, seek monetary relief including but not limited to restitution to Plaintiff and Class Members of money or property that Defendants may have acquired by means of Defendants' unlawful, and unfair business practices; restitutionary

disgorgement of all profits accruing to Defendants because of Defendants' unlawful and unfair business practices; declaratory relief; and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## COUNT X
## VIOLATION OF CALIFORNIA CONSUMER RECORDS ACT
## CAL. CIV. CODE § 1798.80 *ET SEQ.*

**(On Behalf of Plaintiff and the Classes, or, alternatively, the California Sub-Class)**

309.   Plaintiff restates and reallege all of the foregoing paragraphs as if fully set forth herein.

310.   Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

311.   The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

312.   Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

      a.    The security breach notification shall be written in plain language;

      b.    The security breach notification shall include, at a minimum, the following information:

           i.    The name and contact information of the reporting person or

business subject to this section;

ii.    A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

iii.    If the information is possible to determine at the time the notice is provided, then any of the following:

1. The date of the breach;

2. The estimated date of the breach; or

3. The date range within which the breach occurred. The notification shall also include the date of the notice.

iv.    Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

v.    A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

vi.    The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

313.    The Data Breach described herein constituted a "breach of the security system" of Defendants.

314.    As alleged above, Defendants unreasonably delayed informing Plaintiff and Class Members about the Data Breach, affecting their Personal and Medical Information, after Defendants knew the Data Breach had occurred.

315.    Defendants failed to disclose to Plaintiff and Class Members, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal and Medical Information when Defendants knew or reasonably believed such information had been compromised.

316.    Defendants' ongoing business interests gave Defendants incentive to conceal the Data Breach from the public to ensure continued revenue.

317.   Upon information and belief, no law enforcement agency instructed Defendants that timely notification to Plaintiff and Class Members would impede its investigation.

318.   As a result of Defendants' violation of Cal. Civ. Code § 1798.82, Plaintiff and Class Members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class Members because their stolen information would have had less value to identity thieves.

319.   As a result of Defendants' violation of Cal. Civ. Code § 1798.82, Plaintiff and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

320.   Plaintiff and Class Members seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to the damages suffered by Plaintiff and Class Members as alleged above and equitable relief.

321.   Defendants' misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendants conducted with the intent on the part of Defendants of depriving Plaintiff and Class Members of "legal rights or otherwise causing injury." In addition, Defendants' misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff and Class Members and despicable conduct that has subjected Plaintiff and Class Members to hardship in conscious disregard of their rights. As a result, Plaintiff and Class Members are entitled to punitive damages against Defendants under Cal. Civ. Code § 3294(a).

## COUNT XI
## INJUNCTIVE / DECLARATORY RELIEF

**(On Behalf of Plaintiff and the Nationwide Class)**

CLASS ACTION COMPLAINT

322.    Plaintiff restates and reallege all of the foregoing Paragraphs as if fully set forth herein.

323.    This count is brought on behalf of all Classes.

324.    This Count is brought under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

325.    As previously alleged, Plaintiff and Class Members entered into an implied contract that required Defendants to provide adequate security for the Confidential Information they collected from Plaintiff and Class Members.

326.    Defendants owe a duty of care to Plaintiff and Class Members requiring them to adequately secure Confidential Information.

327.    Defendants still possesses Confidential Information regarding Plaintiff and Class Members.

328.    Since the Data Breach, Defendants have announced few if any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent further attacks.

329.    Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and Class Members. In fact, now that Defendants' insufficient data security is known to hackers, the Confidential Information in Defendants' possession is even more vulnerable to cyberattack.

330.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their Confidential Information and Defendants' failure to address the security failings that lead to such exposure.

331.    There is no reason to believe that Defendants' security measures are any more adequate now than they were before the Data Breach to meet Defendants' contractual obligations and legal duties.

CLASS ACTION COMPLAINT

332.   Plaintiff, therefore, seeks a declaration (1) that Defendants' existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

      a.  Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

      b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

      c.  Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

      d.  Ordering that Defendants segment patient data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

      e.  Ordering that Defendants not transmit Confidential Information via unencrypted email;

      f.  Ordering that Defendants not store Confidential Information in email accounts;

      g.  Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

      h.  Ordering that Defendants conduct regular computer system scanning and security checks;

      i.  Ordering that Defendants routinely and continually conduct internal

training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j.   Ordering Defendants to meaningfully educate their current, former, and prospective patients about the threats they face as a result of the loss of their Confidential Information to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all members of the Classes, request judgment against the Defendants and that the Court grant the following relief:

A.   An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Classes requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

B.   Injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain personally identifying information to comply with the applicable state laws alleged herein (including, but not limited to, the California Customer Records Act) and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

C.   An order requiring Defendants to pay all costs associated with class notice and administration of class-wide relief;

D.   An award to Plaintiff and all members of the Classes of compensatory, consequential, incidental, nominal, and statutory damages, restitution, and

1  disgorgement, in an amount to be determined at trial;

2  E.   That the Court award statutory damages, trebled, and/or punitive or

3       exemplary damages, to the extent permitted by law, including but not limited

4       to the following:

5       a.  Compensatory damages, punitive damages not to exceed three thousand

6           dollars ($3,000), attorneys' fees not to exceed one thousand dollars

7           ($1,000), and the costs of litigation under Civil Code §56.35;

8       b.  Nominal damages of one thousand dollars ($1,000) for each violation

9           under Civil Code §56.36(b)(1);

10      c.  Actual damages suffered, according to proof, for each violation under

11          Civil Code §56.36(b)(2);

12      d.  Damages pursuant to Civil Code §§ 1798.84(b) and 1798.150;

13      e.  Injunctive relief pursuant to Civil Code § 1798.84(e); and

14      f.  All other damages, injunctive relief, attorneys' fees, expenses and costs

15          permitted by law or statute.

16  F.   An award of credit monitoring and identity theft protection services to

17       Plaintiff and all members of the Classes;

18  G.   An award of attorneys' fees, costs, and expenses, as provided by law or

19       equity;

20  H.   An award for equitable relief requiring restitution and disgorgement of the

21       revenues wrongfully retained as a result of Defendants' wrongful conduct;

22  I.   An order requiring Defendants to pay pre-judgment and post-judgment

23       interest, as provided by law or equity; and

24  J.   Any such other and further relief as this Court may deem just and proper.

Dated: August 9, 2024          By:   */s/ Daniel S. Robinson*
                                     Daniel S. Robinson (SBN 244245)
                                     Wesley K. Polischuk (SBN 254121)
                                     Michael W. Olson (SBN 312857)
                                     **ROBINSON CALCAGNIE, INC.**
                                     19 Corporate Plaza Drive

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Todd S. Garber (Pro Hac Vice Pending)
Jeremiah Frei-Pearson (Pro Hac Vice Pending)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
(914) 298-3281; Fax:
tgarber@fbfglaw.com
jfrei-pearson@fbgflaw.com

*Attorneys for Plaintiff Brandi Adams, individually*
*and on behalf of all others similarly situated*

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      Plaintiff demands a trial by jury of all issues in this action so triable of right.

3

Dated: August 9, 2024        By:    */s/ Daniel S. Robinson*

4                                    Daniel S. Robinson (SBN 244245)
                                     Wesley K. Polischuk (SBN 254121)
5                                    Michael W. Olson (SBN 312857)
                                     **ROBINSON CALCAGNIE, INC.**
6                                    19 Corporate Plaza Drive
                                     Newport Beach, CA 92660
7                                    (949) 720-1288; Fax (949) 720-1292
                                     drobinson@robinsonfirm.com
8                                    wpolischuk@robinsonfirm.com
                                     molson@robinsonfirm.com
9

10                                   Todd S. Garber (Pro Hac Vice Pending)
                                     Jeremiah Frei-Pearson (Pro Hac Vice Pending)
11                                   **FINKELSTEIN, BLANKINSHIP,**
                                     **FREI-PEARSON & GARBER, LLP**
12                                   One North Broadway, Suite 900
                                     White Plains, NY 10601
13                                   (914) 298-3281; Fax:
                                     tgarber@fbfglaw.com
14                                   jfrei-pearson@fbgflaw.com

15

16                                   *Attorneys for Plaintiff Brandi Adams, individually*
                                     *and on behalf of all others similarly situated*
17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT 1



**Calibrated Healthcare**

Secure Processing Center
P.O. Box 3826
Suwanee, GA 30024

3 1 574 ****************AUTO**ALL FOR AADC 928
Brandi Adams
336 E Santa Fe Ave Unit 308
Fullerton, CA 92832-4023

August 2, 2024

**RE: Notice of Data Breach**

Dear Brandi Adams:

Calibrated Healthcare, LLC ("Calibrated") provides administrative and clinical healthcare services to entities across the United States. We are writing to notify you of a data incident that may impact your information that we received in connection with the services we provide to Optum California.

**What Happened?** On February 26, 2024, Calibrated identified suspicious activity related to certain systems within its computer network. In response, Calibrated promptly took the systems offline and began an investigation. The investigation determined that certain portions of Calibrated's network were accessed between February 25 and February 26, 2024, and, during that timeframe, certain files were likely copied without authorization. As a result of that determination, Calibrated initiated a comprehensive review of the data to determine what type of information was present and to whom it relates. This review was recently completed and identified information relating to some of our customers. We began notifying our customers on May 1, 2024, and worked with them to notify potentially impacted individuals, including you.

**What Information Was Involved?** While we have no evidence that any of your information has been used for identity theft or fraud, our investigation determined that the following information was present in the reviewed files and may have been impacted: date of birth, medical information, Authorization Number, medical record number, Member ID, diagnosis, diagnosis code, procedure type, prescription information, health insurance information and Health Plan Name or Code.

**What We Are Doing.** In response to this incident, we dedicated significant resources to confirming the security of our network, conducting a comprehensive investigation, and completing a detailed review of the relevant files. We then notified our potentially affected customers and worked with them to provide notice to potentially impacted individuals as quickly as possible. As part of our ongoing commitment to the security of information in our care, we are also reviewing our existing policies and procedures and enhancing our existing security tools.

As an added precaution, we are offering you 12 months of credit monitoring and identity protection services, through Epiq, at no cost to you. If you wish to activate these services, you may follow the instructions included in the *Steps You Can Take to Help Protect Personal Information* section on the next page of this letter. Please note you must enroll in these services directly, as we are unable to do so on your behalf.

**What You Can Do.** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors. Again, additional information and resources may be found in the *Steps You Can Take to Help Protect Personal Information* section on the next page of this letter.

**For More Information.** If you have additional questions regarding this incident, please call our dedicated call center at 888-596-6176, which is available between 6am- 6pm Pacific Time, Monday through Friday.

Sincerely,
Calibrated Healthcare