**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BRANDI ADAMS, and TREVOR HOLDEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CALIBRATED HEATLHCARE SYSTEMS, LLC, a California limited liability company, and CALIBRATED HEALTHCARE, LLC, a California limited liability company,

Defendants.

Case No. 8:24-cv-01754-JWH-KES

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 45]**

Before the Court is the unopposed motion of Plaintiffs Brandi Adams and Trevor Holden for preliminary approval of a class action settlement of the above-captioned case.[1] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, the Court **GRANTS** the Motion.

## I. BACKGROUND

### A. Allegations

In February 2024 Defendants Calibrated Healthcare Systems, LLC and Calibrated Healthcare, LLC became aware of a security incident during which unauthorized parties accessed certain systems within their computer network.[2] Plaintiffs allege that, between February 25 and 26, 2024, certain files containing personally identifiable information ("PII") and protected health information ("PHI") were accessed, viewed, copied, and disclosed without authorization (the "Data Breach").[3] The PII and PHI included Plaintiffs' and proposed Class Members' names, dates of birth, medical diagnosis/treatment information, health insurance information, including claims and billing information, and, for some patients, their Social Security number and driver's license number (collectively, the "Confidential Information").[4] Defendants subsequently sent to Plaintiffs and other proposed Class Members a letter entitled "Notice of Data Breach."[5]

---

[1] Pls.' Mot. for Prelim. Appr. of Class Action Settlement (the "Motion") [ECF No. 45].

[2] Compl. (the "Complaint") ¶ 1.

[3] *Id.*

[4] *Id.*

[5] Motion 2:13–14.

**B. Procedural History**

In August 2024, following the issuance of the Notice of Data Breach, Plaintiff Adams filed the instant class action against Defendants.[6] In October 2024 Adams filed a motion to consolidate the instant action with Case No. 5:24-cv-01946-SSS-SP, which Plaintiff Holden filed against Defendant Calibrated Healthcare LLC.[7] In December 2024 the Court granted the Motion to Consolidate,[8] and the next month Plaintiffs filed the operative Consolidated Complaint.[9]

In July 2025 Defendants filed the Joint Notice of Settlement,[10] and in September 2025 Plaintiffs filed the instant Motion.[11]

**C. Summary of Proposed Settlement**

In September 2025 Plaintiffs also filed a Settlement Agreement, which is summarized below.[12]

**1. Settlement Class**

The proposed Settlement Class is defined as follows:[13]

> The approximately 34,562 persons identified on the Settlement Class List, including Plaintiffs, whose Confidential Information may

---

6 *See* Complaint.

7 Pl.'s Mot. to Consolidate Cases (the "Motion to Consolidate") [ECF No. 29].

8 Order Granting Motion to Consolidate [ECF No. 35].

9 Consolidated Complaint [ECF No. 36].

10 Joint Not. of Settlement (the "Joint Notice of Settlement") [ECF No. 41].

11 *See* Motion.

12 *See* Class Action Settlement Agreement and Release (the "Settlement Agreement") [ECF No. 46].

13 *Id.* at ¶ 46.

have been compromised as a result of the Data Breach. Excluded from the Settlement Classes are: (1) the Judges presiding over the Action, members of their families, and staff; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, and directors; (3) individuals who properly execute and submit a procedurally proper and timely Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Breach, or who pleads nolo contendere to any such charge.

**2. Relief to the Settlement Class**

Plaintiffs and Class Counsel's current estimation, which is not opposed by Defendants, of the total value of the settlement benefits offered to the Settlement Class is $27,184,332.60.[14] The Settlement Value includes the $1,750,000.00 Settlement Fund; $24,804,832.60 in value for the provided Medical Monitoring service (after deducting the cost of providing that benefit); and $630,000.00 in remedial measures by Defendants.[15]

**a. Settlement Fund**

The Settlement provides for a non-reversionary Settlement Fund of $1,750,000.00, used to pay the following:

- reasonable Administrative Expenses incurred pursuant to this Settlement Agreement;
- taxes;

---

[14] Motion 8:16–20.

[15] *Id.* at 8:20-24.

- the cost of procuring Medical Monitoring and Identity Theft Insurance Services for All Settlement Class Members;
- any Service Awards approved by the Court;
- any Fee Award and Costs approved by the Court;
- the Monetary Payments;
- any Approved Claims for Out-of-Pocket Costs Payment and Documented Time Payments; and
- any other Settlement Benefits.[16]

All Settlement Class Members will automatically be sent a Monetary Payment, likely between $28.68 and $21.44, and each member may submit a claim with Reasonable Documentation to receive up to $5,000 for reimbursement of Out-of-Pocket Costs and up to $175 for Documented Time.[17]

Settlement Class Members may elect to receive their Settlement Payments electronically.[18] Otherwise, they will receive their Settlement Payment by a physical check sent by U.S. Mail.[19] If a Settlement Class Member elects to receive an electronic payment, then the enrollment instructions for Medical Monitoring will be emailed to him or her.[20] Otherwise, all Settlement Class Members will receive their enrollment instructions for Medical Monitoring by U.S. Mail when they are sent their Settlement Payment.[21]

Any monies remaining in the Settlement Fund more than 160 days after distribution of Settlement Payments will be evenly distributed to all Settlement

---

[16] Settlement Agreement ¶¶ 27 & 68.

[17] *Id.* at ¶¶ 75 & 76; Motion 4:25–7:9.

[18] Settlement Agreement ¶ 78.

[19] *Id.*

[20] Motion 6:22-28.

[21] *Id.*

Class Members who cashed or deposited the initial payment they received, provided that the payment amount is equal to or greater than $3.00.[22] Subject to Court approval, any remaining funds will be distributed to Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members.[23]

No portion of the Settlement Fund will revert or be repaid to Defendants after the Effective Date.[24]

**b. Medical Monitoring**

All Settlement Class Member will automatically receive two years of the Medical Monitoring service Medical Shield Total provided by CyEx, valued at $29.95 per month.[25] Thus, for the two-year term, a single subscription is valued at $718.80.[26] This benefit provides $24,843,165.60 in value to the Settlement Class based upon the retail cost of the subscription, before deducting the cost of providing those services to all Settlement Class Members, which is being paid out of the Settlement Fund.[27] After deducting the $38,333.00 cost to provide two years of Medical Monitoring to all Settlement Class Members, the overall value the Medical Monitoring provides to the Settlement Class is $24,804,832.60.[28]

---

[22] Settlement Agreement ¶ 77.

[23] *Id.* at ¶¶ 28, 77, & 84.

[24] *Id.* at ¶ 84.

[25] *Id.* at ¶¶ 25 & 75.

[26] *Id.* at ¶ 86 n.3.

[27] *Id.* at ¶¶ 75 & 86.

[28] Motion 4:22–24.

**c. Defendants' Remedial Measures**

The Parties agree that Class Representatives, Class Counsel, and this litigation were a motivating factor for certain remedial efforts and business practices changes taken by Defendants following the Data Breach, including but not limited to enhancements in data management, identity protection, cloud security, and threat detection capabilities, which are estimated to have cost Defendants $630,000.00.[29]

**3. Settlement Administrators**

After soliciting competing bids from several qualified settlement administrators, Class Counsel selected, and propose that the Court appoint, Simpluris as the Settlement Administrator.[30] Simpluris has agreed the total amount of the Administrative Expenses will not exceed $135,000.[31]

**4. Notice Plan**

Within seven days of the Preliminary Approval Order, Defendants will provide the Settlement Class List to the Settlement Administrator.[32] Within 30 days thereafter, the Settlement Administrator will disseminate the Summary Notice via U.S. Mail to all Settlement Class Members.[33] The Summary Notice will include the URL for the Settlement Website,[34] where Settlement Class Members can either download a Claim Form to submit by mail or submit a Claim Form online for an Out-of-Pocket Costs Payment and/or a Documented

---

[29] Settlement Agreement ¶ 85.

[30] Motion 10:4-8.

[31] *Id.*

[32] Settlement Agreement ¶ 91.

[33] *Id.* at ¶ 92.

[34] *Id.* at ¶ 52. The URL for the Settlement Website is www.calibratedsettlement.com.

Time Payment, or otherwise elect to receive a Monetary Payment electronically.[35] Notice of any changes to the Final Approval Hearing and notice of entry of final judgment will be provided through the Settlement Website.[36] The Settlement Website will contain the Settlement Agreement, the Long Form Notice, the Claim Form, the Preliminary Approval Order, the operative complaint, and other important documents, or any documents that this Court orders posted.[37] The Settlement Website will include a toll-free telephone number and mailing address through which the Settlement Administrator can be contacted, and will allow for the electronic submission of Requests for Exclusion.[38] If the Court finally approves the Settlement, all Settlement Class Members will be sent—by U.S. Mail within 30 days after the Effective Date or the date that all Claim Forms have been processed, whichever date is later—enrollment instructions for the two years of free Medical Monitoring and a Monetary Payment, unless the Settlement Class Member submitted a Claim Form requesting to receive those electronically.[39] Any approved Out-of-Pocket Costs Payments and Documented Time Payments will be sent with the Monetary Payment.[40] For any Settlement Payment returned to the Settlement Administrator as undeliverable, the Settlement Administrator will make reasonable efforts to find a valid address and resend the Settlement Payment

---

35 Settlement Agreement ¶ 92.

36 Motion 9:7-9.

37 *Id.* at 9:9–11; Settlement Agreement ¶ 88(d).

38 Settlement Agreement ¶¶ 7, 52, & 88.

39 *Id.* at ¶¶ 78 & 81.

40 *Id.*

within 30 days after the check is returned to the Settlement Administrator as undeliverable.[41]

**5. Opt-Out and Objection Procedures**

Any Settlement Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period.[42] To be valid, the Request for Exclusion must be (a) submitted electronically on the Settlement Website; or (b) postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period.[43] The Requests for Exclusion and Objection procedures are detailed in plain language in the Long Form Notice, the Settlement Agreement, and on the Settlement Website.[44] No Person may be excluded from the Settlement Class through "mass" or "class" opt-outs.[45] Pursuant to the Settlement Agreement, Defendants have the sole discretion to terminate the Settlement if Settlement Class Members exceeding a certain percentage of the Settlement Class request exclusion from the Settlement Class.[46] The specific Opt-Out Threshold will be filed with the Court under seal through a Confidential Supplemental Agreement.[47]

Any objectors who fail to object in the manner prescribed will be deemed to have waived their objections and forever be barred from making any such

---

41 *Id.* at ¶ 83.

42 *Id.* at ¶ 33.

43 *Id.* at ¶ 96.

44 *Id.* at ¶¶ 96 & 97.

45 *Id.*; Motion 10:16-17.

46 Settlement Agreement ¶ 98.

47 Motion 10:20–22 (citing *In re Anthem, Inc. Data Breach Litig.*, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) (finding information sealable to "prevent third parties from utilizing [this provision] for the improper purpose of obstructing the settlement and obtaining higher payouts")).

objections in the Action or in any other action or proceeding of any type or nature.[48]

**6. Release**

In exchange for the Settlement's benefits, all Settlement Class Members will release all Released Claims against Defendants as detailed in the Settlement Agreement.[49]

**7. Class Counsel Fees and Expenses**

Class Counsel will seek an award of attorneys' fees and costs not to exceed $575,000 and Service Awards of $5,000 for each of the two proposed Class Representatives.[50] The motion for Fee Award and Costs and Service Awards will be filed at least 21 days before the Objection Deadline so Class Members will have the opportunity to object.[51] Class Counsel will detail their work, hours, lodestar, and expenses in the motion for Fee Award and Costs.[52] Pursuant to the Settlement Agreement, Class Counsel will have discretion to allocate the amount of Fee Awards and Costs to counsel for Plaintiffs, absent Court order.[53]

The parties have no agreement regarding the attorneys' fees or litigation costs to be paid to Class Counsel, and the Settlement Agreement is not contingent upon the Court awarding attorneys' fees and costs or Class Representative Service Awards.[54] Defendants agree not to oppose a request by

---

48 Settlement Agreement ¶ 98.

49 *Id.* at ¶¶ 60–64.

50 *Id.* at ¶¶ 103 & 105.

51 *Id.*

52 Motion 7:23–24.

53 Settlement Agreement ¶¶ 106–108.

54 *Id.*

Class Counsel for an award of attorneys' fees and costs, so long as that request "does not exceed five hundred seventy-five thousand dollars and no cents ($575,000)."[55]

## II. LEGAL STANDARD

### A. Preliminary Settlement Approval

"The claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement" may be settled "only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e) of the Federal Rules of Civil Procedure] is the protection of th[e] Class Members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982). The decision to approve a class action settlement is "committed to the sound discretion of the trial judge," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), who must examine the settlement to determine if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether a class settlement is "fair, reasonable, and adequate," a district court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[55] *Id.* at ¶ 105.

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats Class Members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The goal of Rule 23(e)(2), as amended in 2018, "is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. A court must review the entire settlement agreement, as a whole, for overall fairness. *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

**B. Preliminary Certification of a Settlement Class**

One prerequisite for directing notice of the proposed settlement to the class is a determination that "the court will likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *9 (C.D. Cal. Feb. 26, 2021). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.*

Rule 23(a) imposes the following prerequisites on class actions: (1) the class is so numerous that a joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and

adequately protect the interests of the class (adequacy). *See* Fed. R. Civ. P. 23(a).

In addition, Rule 23(b) requires at least one of the following to be true for a class action to be maintained:

(1) prosecuting separate actions by or against individual Class Members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the Class Members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### C. Notice Requirements

For any class certified under Rule 23(b)(2), the court "may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and quotation omitted).

## III. ANALYSIS

### A. Preliminary Settlement Approval

#### 1. Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class. That analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation, or "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes. Additionally, class counsel and class representatives are deemed adequate if there are no conflicts of interest between the class representatives and other class members and if the named plaintiffs will "vigorously" prosecute the action on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338.

The Court concludes that, here, no conflicts of interest exist between Plaintiffs and the other class members. Furthermore, Plaintiffs, serving as Class Representatives, as well as Class Counsel, have represented to this Court that

they "have committed themselves to vigorously pursu[e] litigation on behalf of the putative class, and will continue to adequately represent the class through the Effective Date."[56]. Thus, this factor is satisfied for the purpose of preliminary approval.

**2. Arm's-Length Negotiation**

Next, the Court considers whether the proposed settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this factor can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(B), 2018 Advisory Committee Notes.

The Court concludes that the Settlement Agreement was reached through arm's length negotiation. The parties mediated with mediator Jill Sperber, Esq., an "experienced mediator," who conducted a full day of mediation and facilitated additional arms-length discussions following mediation.[57] The use of a mediation process guided by an experienced mediator gives the Court confidence that the parties negotiated the Settlement Agreement at arm's length.

**3. Adequacy of Relief Provided for the Class**

The third factor is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

---

[56] Motion 19:23–27.

[57] *Id.* at 16:14–21.

the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to Class Members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

**a. Costs, Risks, and Delays of Continuing Litigation**

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) ("district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

Class action litigation in data breach actions may be particularly risky. *See Hashemi v. Bosley, Inc.*, 2022 WL 2155117,at *7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."). Plaintiffs in data breach actions can have difficulty in proving damages and causation. *See Koenig v. Lime Crime, Inc.*, 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial"); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *1 (N.D. Ga. Aug. 23, 2016) ("establishing

causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation). Plaintiffs also risk being unsuccessful in certifying the class. *See Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification.").

Here, the Court finds that costs, risks, and delays of continuing litigations favor settlement. Even though Plaintiffs believe that their position is strong, class action litigation is expensive and complex, and there are still many underlying uncertainties. For example, it is uncertain what this Court's disposition would ultimately be with regard to at least the following: class certification, a motion to dismiss, a motion for summary judgment, or any finding that Plaintiffs and Class Members are entitled to damages.[58] If the Court were to rule unfavorably toward Plaintiffs on any of those issues, it would extinguish any recovery by the Settlement Class.[59]

Therefore, this factor weighs in favor of preliminary approval of the Settlement Agreement.

**b. Effectiveness of Proposed Method of Distributing Relief to the Class**

The court must also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims,

---

58 *See also id.* at 12:25–13:9.

59 *Id.* at 13:15–20.

but the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, the Court finds that the method of distributing relief to the class is effective. Plaintiffs have selected Simpluris as the Settlement Administrator, which Defendants do not oppose.[60] The Notice Plan includes direct notice via U.S. Mail to all Settlement Class Members.[61] The Settlement Administrator will also email Class Members for whom it has an email address and who do not respond to the mailed Notice.[62] The Court has reviewed the Notice forms and finds that they are concise and informative.[63]

Once the Settlement Agreement receives final approval, Settlement Class Members will be sent Medical Monitoring enrollment instructions and Monetary payment will be automatically sent by U.S. Mail to all Settlement Class Members, or Settlement Class Members can elect to receive Monetary Payment electronically and their Medical Monitoring enrollment instructions via email.[64] To make a claim for Out-of-Pocket Costs Payment or a Documented Time Payment, Settlement Class Members can visit the Settlement Website and complete an electronic form, or mail back the Claim Form.[65]

Therefore, this factor weighs in favor of preliminary approval of the Settlement Agreement.

---

60 *Id.* at 17:7–8.

61 *Id.* at 17:8–9; Settlement Agreement ¶¶ 91 & 92.

62 Motion 17:9–11.

63 *See* Settlement Agreement, Ex. D. (the "Notice of Settlement").

64 Motion 17:14–18.

65 *Id.* at 17:18–22.

**c. Proposed Award of Attorneys' Fees**

"At the preliminary approval stage, the Court need not make its final decision regarding the reasonableness of attorneys' fees and costs, but need only determine that the requested fees and costs are not the products of apparent collusion." *Hollis v. Union Pac. R.R. Co.*, 2018 WL 6273014, at *6 (C.D. Cal. Mar. 6, 2018). The Ninth Circuit has set 25% as a benchmark for a reasonable fee award. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

Here, there is no evidence that the requested attorneys' fees and costs are the product of collusion. Furthermore, the parties are not currently in agreement regarding the propriety of attorneys' fees, but Class Counsel will seek an award of attorneys' fees and costs not to exceed $575,000.[66] The total value of the settlement benefits offered to the Settlement Class is $27,184,332.60;[67] therefore, a fee award of $575,000 (approximately 2% of the total settlement benefits) is well under the benchmark for a reasonable fee award.

Therefore, this factor weighs in favor of preliminary approval of the Settlement Agreement.

**d. Agreement Identification**

The Court must also evaluate any agreement made in connection with the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Here, the Settlement Agreement presently before the Court is the only agreement.

Therefore, this factor weighs in favor of preliminary approval of the Settlement Agreement.

---

[66] *See id.* at 7:18–8:14.

[67] *Id.* at 8:16–20.

**4. Equitable Treatment of Class Members**

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats Class Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among Class Members takes appropriate account of differences among their claims, and whether the scope of the release may affect Class Members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

Here, the Settlement Agreement treats all members of the proposed Settlement Class equally. In addition to the monetary payment and medical monitoring services that all proposed Settlement Class members will receive, Settlement Class members may apply for an Out-of-Pocket Costs Payment or a Documented Time Payment to remedy their individual circumstances.

Therefore, this factor weighs in favor of preliminary approval of the Settlement Agreement.

Accordingly, the Court concludes that it will likely be able to approve the proposed Settlement Agreement.

**B. Preliminary Certification of Settlement Class**

In addition to moving for preliminary approval of the settlement agreement, Plaintiffs move for an order conditionally certifying the settlement class.[68] As the proponent of class certification, the plaintiff bears the burden of demonstrating that all four prerequisites of Rule 23(a) have been met. *See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 318 (C.D. Cal. 1998).

---

68 *See id.* at 17:23–18:3.

**1. Rule 23(a) Requirements**

**a. Numerosity**

"A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable." *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 684 (C.D. Cal. 2020) (citing *Hanlon*, 150 F3d at 1019)). "To be impracticable, joinder must be difficult or inconvenient." *Id.* Generally, numerosity is satisfied when a proposed class includes 40 or more members. *See id.*

Here, the Court finds that joinder of the approximately 34,562 proposed Class Members would be impractical.[69] Therefore, the proposed Class is sufficiently numerous.

**b. Commonality**

"[C]ommonality requires that the Class Members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350). The commonality prerequisite is generally satisfied when a lawsuit challenges a system-wide practice or policy that affected or applied to all class members. *See, e.g.*, *Miles v. Kirkland's Stores*, 89 F.4th 1217, 1223 (9th Cir. 2024).

Here, the Court finds that common issues of law and fact affect all proposed Settlement Class members uniformly.[70] For example, the question of whether Defendants behaved negligently in connection with their security practices—prior to, during, and following the Data Breach—is common to the proposed class. Additionally, Defendants' conduct is the same with respect to

---

[69] *Id.* at 18:7–8.

[70] *See id.* at 18:17–22.

all proposed Settlement Class members. Therefore, the commonality requirement is satisfied.

**c. Typicality**

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(3)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The Rule 23(a) standard is "permissive," and it requires only that the representative's claims are "'reasonably co-extensive with those of absent Class Members.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).

Here, Plaintiffs' and the proposed Class Members' claims arise from the same conduct—the Data Breach—and they are based upon Defendants' allegedly deficient security practices.[71] Therefore, the typicality requirement is satisfied.

**d. Adequacy**

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is "adequate" when counsel for the class is qualified and competent, the representatives' interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *O'Connor*, 184 F.R.D. at 335 (citing *In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir.), *as amended* (July 15, 1982)).

---

[71] *Id.* at 19:6–8.

Here, as discussed previously, Class Counsel is qualified and competent to represent the interests of the proposed Settlement Class, and there is no evidence of collusion. Additionally, Plaintiffs and Class Counsel "understand their responsibilities in serving as Class Representatives and Class Counsel have committed themselves to vigorously pursuing litigation on behalf of the putative class."[72]

Therefore, the adequacy requirement is satisfied.

**2. Rule 23(b)(3) Requirements**

In addition to the requirements of Rule 23(a), the Settlement Class must satisfy Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained when: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). In the settlement context, the manageability criterion of Rule 23(b)(3)(D) does not apply. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (citation omitted). "The main concern in the predominance inquiry" is "the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

Here, common questions will "'predominate over any questions affecting only individual members'" because most of the material issues in this case can

---

[72] *Id.* at 19:23–27.

be resolved on a class-wide basis. *See Amchem Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 468 (2013). For example, issues involving the alleged Data Breach affect all proposed Class Members, and, thus, they are appropriate for class-wide resolution. Because those issues are central to the claims—and, indeed, they are among the most important questions in this case—common questions predominate over individual ones. *See id.*

Furthermore, because important common questions predominate over individualized issues, and because the class is so numerous that resolution through another means is impracticable and inefficient, the superiority requirement is also satisfied. *See id.* at 460–61.

Accordingly, the Court conditionally certifies the proposed Settlement Class for the purpose of settlement.

**C. Rule 23(c)(2)(B) Notice Requirements**

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and quotation omitted).

As previously discussed, the Court concludes that the proposed method of distributing notice to the members of the proposed Settlement Class is reasonable. Additionally, after reviewing the proposed Notice, the Court finds that the following requirements are clearly stated: the nature of the action;[73] the class claims, issues, or defenses;[74] that a class member may enter an appearance through an attorney if the member so desires;[75] that the court will exclude from the class any member who requests exclusion;[76] and the binding effect of a class judgment on members under Rule 23(c)(3).[77]

However, two of the requirements are not currently met: the definition of the class certified and the time and manner for requesting exclusion. The proposed Notice does not include the full definition of the settlement class, nor does it state the time limit for requesting exclusion. The Court recognizes that the definition of the proposed Settlement Class is not finalized until the Court rules on the instant motion and, similarly, that the dates cannot be input into the Notice form until the Court issues the instant order. Additionally, as indicated by yellow highlighting on the Notice form submitted to the Court, there are

---

73 Notice of Settlement 1.

74 *Id.* at 9.

75 *Id.* at 13.

76 *Id.* at 2.

77 *Id.*

additional placeholder fields that need to be updated, such as the telephone number, as well as the "more information is available at ______________" placeholder field.[78]

Therefore, for the reasons stated, the Court provisionally approves the proposed Notice and **DIRECTS** the parties to insert the proposed Settlement Class, input the appropriate dates, and update all placeholder fields, in accordance with this Court's order, prior to distributing the Notice.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Motion for Preliminary Approval of Class Action Settlement [ECF No. 45] is **GRANTED**.

2. The Settlement Agreement is **PRELIMINARILY APPROVED**.

3. The following class is **CERTIFIED** for settlement purposes only:

> [t]he approximately 34,562 persons identified on the Settlement Class List, including Plaintiffs, whose Confidential Information may have been compromised as a result of the Data Breach.

4. Plaintiffs Brandi Adams and Travor Holden are **APPOINTED** as Class Representatives for the Settlement Class, for settlement purposes only.

5. Attorney Daniel S. Robinson of Robinson Calcagnie, Inc. and attorney Todd S. Garber of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP are **APPOINTED** as Class Counsel, for settlement purposes only.

6. Simpluris is **APPROVED** as the Settlement Claims Administrator, for settlement purposes only.

7. The Notice Plan and forms of Notice are provisionally **APPROVED**, in accordance with the guidance set forth herein. Once the

---

78 *See, e.g.*, *id.* at 6.

changes are made, the distribution of Notice to the Settlement Class members is **AUTHORIZED**, pursuant to the Notice plan.

8. The following deadlines are **SET**:

a. Notice must be distributed according to the Notice Plan no later than April 10, 2026. That date will be known as the Notice Date, and it will supersede the "Notice Date" definition in the Settlement Agreement.[79]

b. Any motion for final approval of the Proposed Settlement including any motion for fees and expenses must be filed by June 26, 2026. Any responses are due July 10, 2026, and any replies are due July 24, 2026.

c. The Defendants' Counsel's affidavit or declaration confirming compliance with form, manner, and timeliness of Notice are due May 11, 2026.

9. The Opt-Out period ends on July 9, 2026.

10. A final approval hearing is **SET** for August 13, 2026, at 10:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

11. The Status Conference currently set for February 27, 2026, is **VACATED**.

**IT IS SO ORDERED.**

Dated: February 24, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE

[79] *See* Settlement Agreement ¶ 29.