Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Todd S. Garber (*Pro Hac Vice*)
Jeremiah Frei-Pearson (*Pro Hac Vice*)
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
(914) 298-3281
tgarber@fbfglaw.com
jfrei-pearson@fbgflaw.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BRANDI ADAMS and TREVOR HOLDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CALIBRATED HEALTHCARE SYSTEMS, LLC and CALIBRATED HEALTHCARE, LLC,<br><br>Defendants. | Lead Case No.: 8:24-cv-01754-JWH-KES<br><br>Assigned for All Purposes to: Courtroom 9D, Hon. John W. Holcomb<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Filed Concurrently with Declarations and Proposed Order]**<br><br>Date: August 13, 2026<br>Time: 10:00 a.m.<br>Courtroom: 9D |

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 2
A. The Data Breach and Procedural History of This Action ........ 2
B. Settlement Negotiations and Mediation ........ 2
C. Preliminary Approval and Fee Motion ........ 3
III. THE TERMS OF THE SETTLEMENT ........ 4
A. The Settlement Class and Release ........ 4
B. Settlement Benefits and Monetary Terms of the Settlement ........ 5
1. Medical Monitoring and Identity Theft Insurance Services ........ 5
2. Cash Payments to Settlement Class Members ........ 6
3. Calibrated’s Remedial Measures ........ 8
4. Attorneys’ Fees and Costs and Service Awards ........ 9
5. Total Value of the Settlement is in Excess of $27 Million ........ 9
IV. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ........ 10
A. Class Certification ........ 10
B. The Settlement is Fundamentally Fair, Adequate, and Reasonable ........ 10
1. The Strength of Plaintiffs’ Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation ........ 11
2. The Risk of Maintaining Class Action Status Through Trial ........ 12
3. The Settlement is an Extraordinary Result ........ 13
4. The Extent of Discovery Completed and Stage of Proceedings ........ 14
5. The Experience and Views of Class Counsel ........ 14
6. Class Members’ Overwhelmingly Positive Reaction ........ 15
7. The Rule 23(e)(2) Factors Are Satisfied ........ 15
a. Class Representatives and Class Counsel Adequately Represented the Class ........ 16
b. The Parties Negotiated the Settlement at Arm’s-Length ........ 16
c. Adequacy of Relief for the Class ........ 17

d. Equitable Treatment of Class Members ........ 17

V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases**

*Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, No. 2:18-cv-08348-CJC-FFM, 2021 WL 606245 (C.D. Cal. Jan. 25, 2021) ........ 10

*Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........ 11

*Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ........ 11

*Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ........ 11

In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539 (9th Cir. 2019) ........ 10

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........ 11

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........ 12

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478 (N.D. Cal. 2016) . 12

*Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ........ 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........ 13

*Mendoza v. Hyundai Motor Co., Ltd*, 2017 WL 342059 (N.D. Cal. 2017) ........ 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..... 15

*Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........ 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........ 10, 11

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........ 10

**Statutes**

Federal Rule of Civil Procedure 23(e) ........ 10, 14

## I. INTRODUCTION

The Court preliminarily approved the Settlement, and the Settlement Administrator has disseminated notice to Class Members in accordance with the Notice Plan.[1] Now, Plaintiffs respectfully request that the Court conduct a final review of the Settlement and approve it as fair, reasonable, adequate, and in the best interest of the Class.

The Settlement is the product of informed, arm's-length settlement negotiations, including a full-day mediation on May 21, 2025, with mediator Jill Sperber, Esq., additional arm's-length settlement negotiations through Ms. Sperber resulting in a settlement in principle on June 25, 2025, and approximately three additional months negotiating and finalizing the Settlement Agreement. Class Counsel, Daniel S. Robinson of Robinson Calcagnie, Inc. and Todd S. Garber of Finkelstein, Blankinship, Frei-Pearson & Garber, LLC, secured an exceptional Settlement that provides significant cash payments to Class Members for their injuries and protects them against future risks caused by the Data Breach.

As explained in greater detail below, the Settlement establishes a non-reversionary cash Settlement Fund of $1,750,000.00, automatically providing all Settlement Class Members with a Monetary Payment likely between $28.68 and $21.44 and two free years of Medical Monitoring and Identity Theft Insurance Services ("Medical Monitoring"). Class Members can also submit a Claim Form with Reasonable Documentation to receive up to $5,000 for reimbursement of Out-of-Pocket Costs related to any identity theft and fraud fairly traceable to the Data Breach and up to $175 for Documented Time attempting to remedy issues fairly traceable to the Data Breach. The Settlement includes remedial efforts taken by Calibrated, which are estimated to have cost Calibrated $630,000.00. The Settlement Fund will cover Administrative Expenses, and any Service Awards to Class Representatives and any Fee Award and Costs approved by the Court.

The Court-approved Notice Plan provided for notice by U.S. mail, as well as the

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement. Dkt. 46.

creation of a Settlement Website where Notice was provided during the Claims Period, which remains open until July 9, 2026. The Settlement Administrator believes over 97% of the Class Members received Class Notice. (Declaration of Julie Meichsner ("Meichsner Decl.") ¶¶ 5-7, 17.) The reaction from Class Members has been overwhelmingly positive and strongly supports final approval. The objection deadline was June 9, 2026, and the exclusion is July 9, 2026. The Settlement Administrator received no objections to the Settlement, and has received only two requests for exclusion to date. (*Id.* ¶¶ 11-14.)

In light of the valuable benefits conveyed to Class Members and the significant risks faced through continued litigation, the terms of the Settlement are fair, reasonable, and adequate, and merit final approval.

## II. BACKGROUND

### A. The Data Breach and Procedural History of This Action

On or about February 26, 2024, Calibrated became aware of a security incident during which unauthorized parties accessed certain systems within its computer network between February 25, 2024 and February 26, 2024. Following the Data Breach announcement, on August 9, 2024, and September 12, 2024, respectively, Plaintiffs Brandi Adams and Trevor Holden filed class action complaints against Calibrated.

On October 2, 2024, Plaintiff Adams filed a Motion to Consolidate the cases, and in accordance with Rule 23(g), Daniel S. Robinson of Robinson Calcagnie, Inc. and Todd S. Garber of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP were appointed on December 27, 2024, as Interim Co-Lead Counsel and to Plaintiffs' Steering Committee. Dkt. 35. On January 10, 2025, Plaintiffs filed a Consolidated Class Action Complaint against Calibrated. Dkt. 36.

### B. Settlement Negotiations and Mediation

The Parties began engaging in arm's-length settlement negotiations after Plaintiffs filed their Consolidated Complaint and subsequently agreed to participate in private mediation on May 21, 2025, before Jill Sperber, Esq. Joint Declaration of Daniel S. Robinson and Todd S. Garber ("Joint Decl.") ¶ 18. In advance of mediation, the Parties

exchanged mediation briefs addressing the claims and defenses in detail, and Defendants provided information and documents concerning the cause and scope of the Data Breach, and Defendants' remedial efforts. *Id.* ¶ 19. Although the Parties did not reach a negotiated resolution at mediation, they continued to negotiate in good faith through Ms. Sperber and on June 25, 2025, ultimately reached an agreement on the general contours of a class settlement. *Id.* ¶ 20. The Parties subsequently informed the Court on July 3, 2025, through a Joint Notice of Settlement that a settlement in principle had been reached, the Parties would reduce the settlement in principle to a formal Settlement Agreement, and Plaintiffs intended to file a motion for preliminary approval. *Id.* ¶ 21.

The Parties exchanged multiple drafts of the Settlement Agreement and its exhibits and ultimately agreed to them on September 17, 2025. *Id.* ¶ 22. Concurrently, Plaintiffs secured multiple bids from competing settlement administrators and financial monitoring companies to select the administrator and product best suited for this Settlement. *Id.* ¶ 23.

The Agreement resolves all claims, actions, and proceedings asserted, or that could be asserted, against Calibrated arising out of or related in any way to the alleged Data Breach, by or on behalf of members of the Settlement Class, but excluding the rights of Settlement Class members who opt out from the Settlement Class after receiving notice of this Settlement or as otherwise stated in this Agreement.

**C. Preliminary Approval and Fee Motion**

On September 18, 2025, Class Counsel moved for preliminary approval of the Settlement (Dkt. 45), which the Court granted on February 24, 2026. Dkt. 52. Since the Preliminary Approval Order, Class Counsel worked alongside Simpluris to revise the Notice and insert the proposed Settlement Class, input the appropriate dates, and update all placeholder fields, in accordance with this Court's order, prior to distributing the Notice. Joint Decl. ¶ 26; *see also* Dkt. 52, at 25-26. Class Counsel also worked with Simpluris to ensure the notice and claims process has gone smoothly for Class Members. *Id.* The Settlement Administrator believes over 97% of the Class Members received Class Notice. (Meichsner Decl. ¶¶ 6, 17.)

On May 19, 2026, Plaintiffs filed their Motion for Award of Attorneys' Fees and Costs, and Service Awards ("Fee Motion"). Dkt. 54. In the Fee Motion, Plaintiffs explained they were requesting an award of $550,382.68 in attorneys' fees, reimbursement of $24,617.32 for reasonable litigation costs and expenses, and Service Awards of $5,000 to each of the two Class Representatives. Plaintiffs also explained that the Settlement Value is $27,184,332.60, based on the $1.75 million Settlement Fund, the additional value of $24,843,165.60 for the Medical Monitoring (before deducting the cost of providing that benefit), and the $630,000 Calibrated allocated in business practice changes because of this case. Dkt. 54 at 6. Thus, the attorneys' fees and costs requested amount to approximately 2% of the Total Settlement Value of $27,184,332.60, and less than 33% of the Settlement Fund of $1,750,000.00, supported by a lodestar multiplier of 1.2 based on the 592.7 hours and collective lodestar of $457,655.75 to secure the relief for the class. Dkt. 54 at 1-2.

Plaintiffs further explained there are no collusion concerns in this case because (1) there was no agreement regarding attorneys' fees, only that Defendants agreed not to oppose a request by Class Counsel for an award that does not exceed $575,000; (2) Class Counsel have significant experience prosecuting data breach class actions and received sufficient documentation and information from Defendants to inform their position on the claims and defenses in this case; (3) the mediation and settlement negotiations were facilitated and overseen by Ms. Sperber—a well-respected and experienced mediator; (4) the Settlement is non-reversionary; and (5) the Settlement is not conditioned in any way on Plaintiffs' prevailing on any award of attorneys' fees. Dkt. 54 at 15-17.

Along with the Motion for Preliminary Approval, each Class Representative submitted a declaration detailing their efforts throughout the litigation. Dkt. 45-3, 45-4.

## III. THE TERMS OF THE SETTLEMENT

### A. The Settlement Class and Release

The proposed Settlement Class is defined as:

> The approximately 34,562 persons identified on the Settlement Class List, including Plaintiffs, whose Confidential Information

> may have been compromised as a result of the Data Breach. Excluded from the Settlement Classes are: (1) the Judges presiding over the Action, members of their families, and staff; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, and directors; (3) individuals who properly execute and submit a procedurally proper and timely Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Breach, or who pleads nolo contendere to any such charge.

SA ¶ 46.

In exchange for the Settlement's benefits, all Settlement Class Members will release all Released Claims against Defendants as detailed in the Settlement Agreement. *Id.* ¶¶ 60-64.

**B. Settlement Benefits and Monetary Terms of the Settlement**

The Settlement provides for a non-reversionary Settlement Fund of $1,750,000.00, used to pay (i) all Administrative Expenses; (ii) any Taxes; (iii) any Service Awards; (iv) any Fee Award and Costs; (v) the cost of the Medical Monitoring; (vi) the Monetary Payments; (vii) any Approved Claims for Out-of-Pocket Costs Payment and Documented Time Payments; and (viii) any other Settlement Benefits. SA ¶¶ 27, 68.

**1. Medical Monitoring and Identity Theft Insurance Services**

All Settlement Class Member will automatically receive two years of Medical Monitoring. SA ¶¶ 25, 75. The Medical Monitoring is Medical Shield Total by CyEx, valued at $29.95 per month. SA ¶ 75(a); Dkt. 45-5, ¶ 10. Thus, for the two-year term, a single subscription is valued at $718.80. Pursuant to the Settlement Agreement, this benefit provides $24,843,165.60 in value to the Settlement Class based on the retail cost of the subscription, before deducting the cost of providing those services to all approximately 34,562 Settlement Class Members, which is being paid for out of the Settlement Fund.[2] SA ¶¶ 75, 86. After deducting the $38,333.00 cost to provide two years

---

[2] $29.95 monthly cost x 24 months = $718.80 value. $718.80 value x 34,562 Class Members = $24,843,165.60 value before deducting the cost of providing that benefit.

of Medical Monitoring to all Settlement Class Members, the overall value the Medical Monitoring provides to the Settlement Class is $24,804,832.60.

Based on the Settlement Administrator's review and analysis of the Settlement Class List, the Settlement Administrator identified 41 additional unique records of Settlement Class Members that contained a valid U.S. mailing address, increasing the Settlement Class to 34,603 Class Members before excluding any opt outs. After excluding the two individuals that have thus far opted out of the Settlement, the Settlement Administrator will automatically send a Monetary Payment and enrollment instructions for Medical Monitoring to 34,601 Class Members. Thus, the actual value provided by the Medical Monitoring is $24,832,865.80 after considering all Class Members that will be sent Medical Monitoring enrollment instructions.[3]

**2. Cash Payments to Settlement Class Members**

All Settlement Class Members will automatically be sent a Monetary Payment, likely between $28.68 and $21.44, and may submit a claim with Reasonable Documentation to receive up to $5,000 for reimbursement of Out-of-Pocket Costs and up to $175 for Documented Time.

The Monetary Payment is for the alleged damages Settlement Class Members suffered as a result of having their Confidential Information allegedly disclosed during the Data Breach, which includes damages for the claims brought under the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, et seq. SA ¶¶ 26, 76. The amount is each Settlement Class Member's pro rata share of the Settlement Fund, after all other Settlement Benefits have been paid for out of the Settlement Fund. SA ¶ 76. The payment amount will likely be between $28.68 and $21.44, assuming the Court approves the requested Fee Award and Costs and Service Awards but depends on the number of approved Out-of-Pocket Costs Payments and Documented Time Payments. *Id.*

[3] $718.80 value x 34,601 Class Members = $24,871,198.80 value before deducting the cost of providing that benefit. After subtracting the $38,333.00 cost to provide all Class Members the Medical Monitoring benefit, the Total Settlement Value is $24,832,865.80

If no claims for Out-of-Pocket Costs or Documented Time are received and the Court approves all other benefits, then the automatic payment will be $28.68. However, if the $150,000.00 aggregate cap on all Out-of-Pocket Costs Payments and the $100,000.00 aggregate cap on all Documented Time Payments are reached, and the Court approves all other benefits, then the automatic payment will be $21.44. *Id.* ¶ 82. The Claims Deadline is still open and claims are still being processed. However, based on current figures, the 34,601 Class Members that will automatically be sent a Monetary Payment will each receive approximately $28.63. Meichsner Decl. ¶ 9. Plaintiffs will submit a supplemental declaration from the Settlement Administrator with updated figures prior to the Final Approval Hearing.

In addition to automatically receiving a Monetary Payment, each Settlement Class Member may submit a claim for up to $5,000.00 for reimbursement of out-of-pocket costs that a Settlement Class Member actually incurred that are fairly traceable to the Data Breach and incurred on or after February 25, 2024. SA ¶¶ 34, 76. Settlement Class Members may also submit a claim for up to seven hours of Documented Time at $25.00 per hour, or $175.00 total, for time actually spent by a Settlement Class Member fairly traceable to the Data Breach. SA ¶¶ 18, 76. Both Out-of-Pocket Costs and Documented Time claims must be supported by Reasonable Documentation, which includes, but is not limited to, credit card statements, bank statements, invoices, telephone records, personal declarations or affidavits, and receipts. SA ¶¶ 18, 34, 38, 76. Out-of-Pocket Costs or Documented Time cannot be documented solely by a personal certification, declaration, or affidavit from the Claimant. *Id.*

The Settlement Administrator will determine whether claims are valid, timely, complete, and reflect valid Out-of-Pocket Costs or Documented Time. SA ¶ 803. Thus far, 13 claims have been submitted for a Documented Time Payment, totaling 72 hours, of which 2 claims have been approved, totaling 9 hours. Meichsner Decl. ¶ 10. 7 claims have been submitted for an Out-of-Pocket Costs Payment, totaling $114,445.00, of which none have been approved. Pursuant to the Settlement Agreement, if the Settlement

Administrator determines that a Claim Form is deficient, the Settlement Administrator will notify the Claimant of the deficiencies and that Claimant will have an opportunity to cure the deficiencies and re-submit the claim. *Id.* ¶ 10; SA ¶ 80.

Settlement Class Members may elect to receive their Settlement Payments electronically. SA ¶ 78. Otherwise, they will receive their Settlement Payment by a physical check sent by U.S. Mail. If a Settlement Class Member elects to receive an electronic payment, then the enrollment instructions for Medical Monitoring will be emailed to them. SA ¶ 78. Otherwise, all Settlement Class Members will receive their enrollment instructions for Medical Monitoring by U.S. Mail when they are sent their Settlement Payment. SA ¶ 81. All Settlement Class Members will have 90 days following distribution of their Settlement Benefits to follow the enrollment instructions to sign up for the Medical Monitoring or otherwise cash or deposition their checks. *Id*.

Any monies remaining in the Settlement Fund more than 160 days after distribution of Settlement Payments will be evenly distributed to all Settlement Class Members who cashed or deposited the initial payment they received, provided that the payment amount is equal to or greater than $3.00. SA ¶ 77. Subject to Court approval, any remaining funds will be distributed to Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members. SA ¶¶ 28, 77, 84; Dkt. 45-7 ¶¶ 7-14.

**3. Calibrated's Remedial Measures**

The Parties agree that Class Representatives, Class Counsel, and this litigation were a motivating factor for certain remedial efforts and business practices changes taken by Calibrated following the Data Breach, including but not limited to enhancements in data management, identity protection, cloud security, and threat detection capabilities, which are estimated to have cost Calibrated $630,000.00. SA ¶ 85. The remedial measures are a meaningful benefit to all Settlement Class Members as well as other Calibrated customers who are not Class Members.

///

### 4. Attorneys' Fees and Costs and Service Awards

On May 19, 2026, Plaintiffs filed their Fee Motion (Dkt. 54), through which they seek an award of attorneys' fees and costs in the amount of $575,000 ($550,382.86 in fees and $24,617.32 in costs), and $5,000 in Service Awards to each of the two Class Representatives. The requested awards are supported by the results achieved, the risk of continued litigation, the Settlement value, the quality of Counsel's representation, awards in comparable cases, the contingent nature of the representation, the response of the Class, and the time and expenses incurred by Plaintiffs' Counsel. The Notice informed Class Members that Class Counsel would seek such an award of attorneys' fees and costs and service awards for the Class Representatives, and Plaintiffs filed a Fee Motion before the objection period had ended. Importantly, no objections to any of the requested awards have been received. Meichsner Decl. ¶ 15.

### 5. Total Value of the Settlement is in Excess of $27 Million

Given the amount of the Settlement Fund, the provision of two years of Medical Monitoring to all Settlement Class Members, and the improvements to Defendants' data security practices that resulted from this Action, Plaintiffs and Class Counsel's estimation, which was not opposed by Defendants, of the total value of the settlement benefits offered to the Settlement Class was $27,184,332.60 pursuant to the Settlement Agreement. The Settlement Value includes the $1,750,000.00 Settlement Fund, the $630,000.00 in enhanced security measures by Defendants (for which the litigation was a substantial motivating factor) listed in SA ¶ 85, and $24,804,832.60 in value that the Settlement Class will receive based on the Medical Monitoring, after deducting the cost of providing that benefit. SA ¶ 86.

Based on the 34,601 Settlement Class Members (after including the 41 additional Class Members identified by Simpluris and excluding the two individuals who thus far requested exclusion), the Total Settlement Value is $27,212,865.80.[4]

[4] $1,750,000.00 Settlement Fund + $630,000.00 enhanced security measures + $24,832,865.80 Medical Monitoring value (after deducting cost of providing that benefit).

## IV. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and service award requested. *Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, No. 2:18-cv-08348-CJC-FFM, 2021 WL 606245, at *1 (C.D. Cal. Jan. 25, 2021). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

### A. Class Certification

In its Preliminary Approval Order, the Court certified the Class for settlement purposes. Dkt. 52. Nothing has changed since the Court's ruling at that time to call the Court's conclusions regarding class certification into question. Joint Decl. ¶ 41. Accordingly, Plaintiffs ask that the Court finally certify the Settlement Class for settlement purposes.

### B. The Settlement is Fundamentally Fair, Adequate, and Reasonable

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits.").

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e), and requires court approval. Courts must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and quotation marks omitted). In considering whether this standard is met, courts consider various factors, including (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the

experience and views of counsel, and (7) the reaction of the class members to the proposed settlement. *Id*.

**1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation**

Plaintiffs are confident that they would succeed if this case proceeded to trial, and that they would be able to prove that Defendants' inadequate security was the cause of the Data Breach and Plaintiffs' damages. However, Calibrated vigorously disputes Plaintiffs' claims, and the risk, expense, and complexity of further litigation is significant. Joint Decl. ¶ 8. All class actions involve a high level of risk, expense, and complexity, but the emerging and evolving area of data breach litigation is especially risky and complex. *See Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").

Further, "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial," which makes further litigation uncertain. *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial."); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL

6902351, at *1 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation).

Although Plaintiffs believe their liability case is strong, would survive any motion to dismiss filed by Defendants, and class certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny Defendant's motion to dismiss and summary judgment motion, or find Plaintiffs and Class Members are entitled to damages. Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co., Ltd*, 2017 WL 342059, at *6 (N.D. Cal. 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. 2016) (cleaned up). Even if Plaintiffs certified a class, successfully opposed summary judgment, and prevailed at trial and on all appeals, they still would face the significant risk of recovering less (or nothing) for Class Members than they are able to obtain now, without protracted litigation.

**2. The Risk of Maintaining Class Action Status Through Trial**

As pointed out above, certification would have been hotly disputed and the outcome uncertain. A district court's order granting class certification under Federal Rule of Civil Procedure 23 is "inherently tentative" and is "subject to revision," so Defendants would have been able to move for de-certification at any time before trial. Coopers v. Lybrand & Livesay, 437 U.S. 463, 469 n.11 (1978), superseded on other grounds by rule. A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Even if Plaintiffs were to win class certification, there would remain a risk of losing on summary judgment or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Class, possibly for years.

///

**3. The Settlement is an Extraordinary Result**

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). The amount Plaintiffs have recovered through this Settlement, which will be used to automatically mail a Monetary Payment and two years of Medical Monitoring to all Class Members without the need for Class Members to submit a Claim Form, is an excellent result for the Class.

The non-reversionary Settlement Fund ($1.75 million) and total value of the Settlement ($27,184,332.60) relative to class size (34,562 persons) under the Settlement Agreement compare favorably to other class action settlements alleging violations of privacy and data security. *See, e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592, Dkt. 322 (C.D. Cal May 10, 2019) (settlement fund of $22 million for 14.9 million class members whose personal information was exposed in data breach); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs).

The $1.75 million Settlement Fund equates to $50.63 per Settlement Class Member, which is comparable to other data breach settlements. *See, e.g.*, *In Re Planned Parenthood Los Angeles Data Incident Litigation*, Case No. 21STCV44106 (Cal. Super. Ct. 2024) ($14.65-per-individual value based on 409,437 class members); *In Re: Ambry Genetics Data Breach Litigation*, Case No. 8:20-cv-00791-CJC-KES (C.D. Cal 2022) ($54.36-per-individual value based on 225,370 class members); *In re Solara Medical Supplies Data Breach Litigation*, Case No. 3:19-cv- 02284-H-KSC (S.D. Cal 2022) ($44.39-per-individual value based on 114,000 class members); *In Re: 21st Century Oncology Customer Data Security Breach Litigation*, Case No. No. 8:16-md-2737-MSS-

AEP (M.D. Fl. 2021) ($3.64-per-individual value based on 2,140,952 class members); *In re Scripps Health Data Incident Litig.*, Case No. 37-2021-00024103-CU-BT-CTL (Cal. Super. Ct. 2021) ($15.20-per-individual value based on 1,184,031 class members). This is *without* accounting for the Total Settlement Value (which includes the value of the Medical Monitoring and remedial measures).

**4. The Extent of Discovery Completed and Stage of Proceedings**

Class Counsel obtained ample confirmatory information through settlement negotiations and confirmatory discovery that provided sufficient information to gauge the strengths and weaknesses of Plaintiffs' claims and the probability of success on the merits. Joint Decl. ¶¶ 19, 25. The information provided by Defendants was appropriately targeted at information relevant to the Settlement. *Id.*; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Manual for Complex Litigation (Fourth) § 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation (Fourth) § 11.423.

Importantly, the stage of the proceedings allowed Plaintiffs to maximize the recovery for the class and provide resources that may otherwise be spent on litigation to be directed to providing immediate benefits to the Settlement Class. By resolving this case at this stage of the proceedings, Plaintiffs have maximized the recovery to the Class and secured an amount that is favorable compared to other approved data breach settlements.

**5. The Experience and Views of Class Counsel**

Plaintiffs are represented by Class Counsel who have extensive experience and expertise in prosecuting complex class actions, including privacy class actions and

specifically, such actions arising out of data breaches compromising PHI and PII. See Joint Decl. ¶¶ 1-2, 46-55. The Settlement provides Class Members with immediate, certain, and meaningful relief that directly addresses the issues they have experienced, or might experience, relating to the Data Breach, without requiring Settlement Class Members to submit a Claim Form. Class Counsel endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class. Joint Decl. ¶¶ 56-58. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Class. *Id.* ¶¶ 13, 81-82.

**6. Class Members' Overwhelmingly Positive Reaction**

The June 9, 2026 Objection Deadline has passed and the Opt-Out Period ends July 9, 2026. The Settlement Administrator received no objections and has only received two requests for exclusion as of the date of the filing of this Motion. Meichsner Decl. ¶¶ 11-14. This demonstrates the overwhelming positive reaction of the Settlement Class to this Settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."). Class Counsel will submit a declaration from the Settlement Administrator before the Final Approval Hearing with updated request for exclusion information. This factor strongly weighs in favor of final approval.

**7. The Rule 23(e)(2) Factors Are Satisfied**

The Court also must find the settlement "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

**a. Class Representatives and Class Counsel Adequately Represented the Class**

The Class Representatives and Class Counsel vigorously and adequately represented the Settlement Class. Plaintiffs do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). As Class Representatives and Class Counsel previously represented to the Court, they "have committed themselves to vigorously pursu[e] litigation on behalf of the putative class, and will continue to adequately represent the class through the Effective Date." Dkt. 52 at 14-15, citing Dkt. 45 at 19. Given the adequacy of representation and no conflict of interest exists, there is no reason to depart from the Court's preliminary approval finding.

**b. The Parties Negotiated the Settlement at Arm's-Length**

As discussed above, the Settlement was reached after months of hard-fought, arm's-length negotiations, including a full-day mediation with an experienced mediator and subsequent negotiations through the mediator, conducted by experienced attorneys. Joint Decl. ¶¶ 18-22; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (finding that engaging in formal mediation with an experienced mediator weighs "in favor of a finding of non-collusiveness").

In addition, as discussed above and in greater detail in Plaintiffs' Fee Motion (Dkt. 54), the requested award of attorneys' fees is within the Ninth Circuit's 25% benchmark for common fund cases, and represents a modest lodestar multiplier of 1.2, which is fair and reasonable in light of the significant risks Class Counsel faced, the contingent nature of the case, the complexity of the issues presented, and the excellent results achieved. Class Counsel's requested fees of $550,382.68 amount to just 2% of the Total Settlement Value of $27,184,332.60. Dkt. 54 at 13-14; *see also Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714, at *9 (N.D. Cal. Aug. 13, 2021) ("given that counsel will not receive a disproportionate amount of the settlement agreement and that

the settlement is non-reversionary, the Court does not find that the clear sailing provision weighs against preliminary approval.").

**c. Adequacy of Relief for the Class**

As set forth above, the relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay that further motion practice, trial, and associated appeals would entail. The monetary value of the Settlement exceeds $27 million, including the $1.75 million non-reversionary Settlement Fund, $630,000 allocated in business practice changes, and the $24,804,832.60 in value that the Medical Monitoring provides to Class Members.

The Court previously found the following weighed in favor of preliminary approval: (1) "the costs, risks, and delays of continuing litigations favor settlement," (2) "the method of distributing relief to the class is effective," (3) "there is no evidence that the requested attorneys' fees and costs are the product of collusion" and "a fee award of $575,000 (approximately 2% of the total settlement benefits) is well under the benchmark for a reasonable fee award," and (4) the Settlement Agreement presently before the Court is the only agreement. Dkt. 52, at 16-19. Nothing has changed and there is no reason for the Court to depart from its previous analysis.

**d. Equitable Treatment of Class Members**

The Settlement treats Class Members equitably relative to each other and their claims. All Class Members will receive an automatic Monetary Payment likely between $28.68 and $21.44 and two free years of Medical Monitoring. Class Members with documented harm may also recover up to $5,000 for reimbursement of Out-of-Pocket Costs related to any identity theft and fraud fairly traceable to the Data Breach and up to $175 for Documented Time attempting to remedy issues fairly traceable to the Data Breach. Nothing should cause the Court to depart from its prior finding that "the Settlement Agreement treats all members of the proposed Settlement Class equally." Dkt. 52 at 20.

///

## V. CONCLUSION

The proposed Settlement is fair, reasonable, and adequate, and warrants final approval. Accordingly, Plaintiffs request that the Court grant this motion, finally approve the Settlement, and enter a final judgment and order.

Dated: June 26, 2026 By: */s/ Daniel S. Robinson*

Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Todd S. Garber (*Pro Hac Vice*)
Jeremiah Frei-Pearson (*Pro Hac Vice*)
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
(914) 298-3281; Fax:
tgarber@fbfglaw.com
jfrei-pearson@fbgflaw.com

*Class Counsel*

**CERTIFICATE OF COMPLIANCE**

The undersigned Class Counsel certifies that this brief contains 5,797 words, which complies with L.R. 11-6.1.

Dated: June 26, 2026

*/s/ Daniel S. Robinson*
Daniel S. Robinson

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2026, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: June 26, 2026

*/s/ Daniel S. Robinson*
Daniel S. Robinson